MILLER, APPELLANT, *v.* YOCUM, EXRX., ET AL., APPELLEES.

(No. 69-335—Decided March 4, 1970.)

Messrs. *Meredith, Meredith, Tait & Basinger* and *Mr. Harry Meredith,* for appellant.

*Mr. Willis S. Siferd, Messrs. Bennett & Bennett, Messrs. McKeever & McKeever* and *Mr. James C. Weger,* for appellees.

O'NEILL, J.  On October 16, 1965, the decedent, Clara Schroyer, opened a checking account at the Peoples Na-

tional Bank, located in Wapakoneta. At the time the account was opened, the decedent and Plumah Yocum signed a depositor's contract which created joint and survivorship rights in the account. It is agreed that Clara Schroyer provided the funds which were deposited in that account.

On October 11, 1966, decedent consented to the appointment of a guardian for herself. The consent which she signed stated that decedent was "unable to take care of myself or my property because of physical disability and infirmity." She selected Mr. McKeever as her guardian. His application for appointment stated that decedent was "an incompetent person by reason of advanced age and illness."

The guardian was appointed on October 21, 1966, and on October 29, 1966, he filed a guardian's inventory, listing a checking account in the Peoples National Bank of Wapakoneta in the amount of $7,046.15 as an asset of the estate. No notice of the filing of this inventory was given to defendant, Plumah Yocum, or anyone else except by publication of notice in a newspaper.

Decedent's guardian presented his papers to the bank and completed a signature card as the guardian of decedent. The guardian took no action to terminate the joint and survivorship account prior to the decedent's death in 1967. No withdrawals or deposits were made by anyone from the time of the appointment of the guardian to the death of the decedent.

To save on his bond, the guardian, on January 27, 1967, deposited most of decedent's securities with the First National Bank as depository. On the receipt which he received when he deposited the securities, the joint account, which is the issue in this case, was listed as "Peoples National Bank of Wapakoneta, Ohio—checking account (Joint and Survivor with Plumah Yocum as Survivor) 7 046.15."

The guardian's final account, which was filed on November 8, 1967, after decedent's death, shows this checking account described in exactly the same way and in the same amount as transferred over to decedent's co-executrices.

The checking account does not appear in that part of the guardian's account which reflects the cash flow during the guardianship. The guardian's account shows that the guardian turned over to the co-executrices personal property in excess of $100,000 or about $4,000 more than he received. Besides this, there was real estate appraised at $57,000. The total value shown in the inventory filed by decedent's co-executrices was $152,292.94, as compared with the guardian's total inventory of $148,689.22.

The trial court found that the decedent intended to establish a joint and survivorship account with the defendant, Plumah Yocum. This was affirmed by the Court of Appeals.

The question which this cause presents to this court is a question of law, which may be stated as follows: Does the appointment of a guardian for one of the parties to a joint and survivorship bank account terminate the joint and survivorship nature of the account as a matter of law?

This is a question of first impression in this court.

The validity of joint and survivorship bank accounts is not involved. Such accounts have been recognized as valid in *Cleveland Trust Co.* v. *Scobie* (1926), 114 Ohio St. 241, based upon a contract between the bank and the depositor. *Fecteau* v. *Cleveland Trust Co.* (1960), 171 Ohio St. 121.

The question presented in the case of *In re Estate of Svab* (1967), 11 Ohio St. 2d 182, is not raised in this cause. The question in *Svab* was whether the intent of the actual depositor of the funds was to create a right of survivorship in the other party to the account. *Fecteau, supra*, held that the question was one of fact. In the instant case, the lower court found, and the Court of Appeals affirmed the finding, that the depositor intended to create a right of survivorship in Plumah Yocum. There is sufficient evidence in the record to support that finding.

*In re Guardianship of Sachs* (1962), 173 Ohio St. 270, presented a question which bears upon the issue in the instant case. In *Sachs, supra*, Mrs. Sachs purchased gov-

ernment bonds which she registered in her name "or" that of another. Some of the bonds matured, and thereby ceased paying interest, after Mrs. Sachs became incompetent but before her death. Some of the bonds did not mature until after her death. The question presented by the instant case was not raised in *Sachs* because the payment of the unmatured bonds to the survivor was not challenged. This court, in *Sachs*, held that the proceeds from the matured bonds should be paid to the estate of Mrs. Sachs because the contract with the government matured prior to her death. The reasoning in that case was that since the portion of the contract requiring payment of interest had ceased to exist, the guardian was required, by Section 2109.42, Revised Code, to sell the bonds and reinvest the funds. Under Section 2111.14, Revised Code, the guardian is required to manage the estate for the best interest of the ward by placing the funds of the estate in productive investments.

The lower Ohio courts which have considered the question presented by the instant case are not in agreement.

In *Abrams* v. *Nickel* (1935 Hamilton County), 50 Ohio App. 500, the court held that the adjudication of lunacy and the appointment of a guardian terminated the joint and survivorship account "and as each had a complete interest in the entire account, equity requires, in the absence of extraordinary circumstances, an equal division of the account between the parties involved as of the time the guardian was appointed."

*In re Estate of Jones* (App. 1952), 68 Ohio Law Abs. 282, held that because the account was part of a contract in which the depositor who became incompetent was to be cared for by the other tenant, the appointment of the guardian did not destroy the joint and survivorship nature of the account.

In *National City Bank of Cleveland* v. *Hewes* (Probate 1962), 90 Ohio Law Abs. 372, the court found no reason for the appointment of a guardian to affect the nature of the account.

Although no cases in courts of other jurisdictions were

found which specifically decided the issue presented by this cause, some of the cases seem to bear on the question by implication. *Howard* v. *Imes* (1956), 265 Ala. 298, 90 So. 2d 818; *Drain* v. *Brookline Savings Bank* (1951), 327 Mass. 435, 99 N. E. 2d 160; *Boehmer* v. *Boehmer* (1953), 264 Wis. 15, 58 N. W. 2d 411. By holding that the guardian has no power to exercise the discretion of his ward and withdraw all of the funds from the accounts, those courts held, by implication, that the appointment of the guardian did not *per se* terminate the joint and survivorship accounts.

In the instant case, it is clear that Mrs. Schroyer, by reason of the life-long relationship between her and Plumah Yocum, and especially because of the failing eyesight and general health of Plumah Yocum, intended to provide for Plumah's needs in the event that Mrs. Schroyer preceded her in death.

The record shows that Mrs. Schroyer had provided a bequest for Plumah Yocum in her will and that, because of her failing health, she wanted to make additional provisions, which she did by the establishment of this joint and survivorship account. It is clear from the record that Mrs. Schroyer understood the difference between a joint account and a joint and survivorship account. She had provided, with regard to her checking account in another bank, for it to be a joint account so that Plumah Yocum could sign checks on that account, but she had not made it a joint and survivorship account.

It is also clear that the guardian did nothing to disturb the survivorship nature of this account. He noted it as such on the receipt which was given him at the time he deposited securities in the other bank as a depository and he noted it as a survivorship account when he transferred it to the co-executrices after Mrs. Schroyer's death.

The court is not called upon in this cause to decide, and the court does not decide, the question which would be presented had Plumah Yocum attempted to withdraw funds from this account after the guardian was appointed but before the decedent died. Neither is the court called upon to decide the question which would be presented if the

funds in the joint and survivorship account were needed for the support and maintenance of the ward during her lifetime.

In this case, the account in question was established as a valid joint and survivorship checking account. The money in the account was not disturbed in any way by the guardian. The funds in this account were not needed for the support and maintenance of the ward, and the trial court held that the ward intended that these funds should go to the survivor. The Court of Appeals affirmed that judgment.

Under all the facts in this case, the court is presented with two simple questions. (1) Did the incompetency of Mrs. Schroyer, as a matter of law, terminate the survivorship nature of this account? (2) If the incompetency did not terminate the survivorship nature of this account, did the appointment of the guardian, as a matter of law, terminate the survivorship nature of the account?

This court holds that the survivorship nature of the account was not terminated by the mere incompetency of Mrs. Schroyer and was not terminated *per se* by the appointment of a guardian for her. In this case, such a result is just.

If the funds in the joint and survivorship account are required to provide necessary support and maintenance for the ward, the guardian has authority to make application to the Probate Court for an order permitting him to use the funds for such purpose pursuant to Section 2101.24, Revised Code, which grants Probate Courts the power equity courts previously had under *Ambrose* v. *Rugg* (1931), 123 Ohio St. 433.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

TAFT, C. J., SCHNEIDER, HERBERT, DUNCAN and CORRIGAN, JJ., concur.

MATTHIAS, J., not participating.