WITT, EXR., APPELLEE, *v.* WARD
ET AL., GUARDIANS, APPELLANTS.

(No. CA88-04-006—Decided
February 13, 1989.)

*Michael T. Gmoser,* for appellee.
*Breidenbach, Johnson, Douple,
Beyoglides & Leve, Daryl R. Douple*
and *Charles A. Johnson,* for ap-
pellants.

*Per Curiam.* This cause came on to be heard upon an appeal from the Preble County Court of Common Pleas, Probate Division.

This is an appeal by defendants-appellants, Charles Ward and Deemer Chandler, guardians of the person and estate of Nannie Ward, from a decision of the Preble County Court of Common Pleas, Probate Division, granting partial summary judgment and judgment after trial in favor of plaintiff-appellee, Faires Witt, executor of the estate of Nannie Ward.

Nannie Ward was the mother of Charles Ward, Deemer Chandler and Emory Ward. She lived with her son, Emory, who had emotional problems stemming from brain damage incurred during a childhood accident. During her lifetime, she lived frugally and was able to amass assets in excess of $100,000.

Her assets were held in several joint and survivorship and payable on death ("P.O.D.") accounts with Emory Ward as beneficiary. Nannie's primary concern was that Emory be provided for in the event of her death. In 1978, she changed the beneficiary of these accounts to Charles Ward, on his advice. The reason for this change was a fear that Emory would be ineligible for Medicaid benefits due to his interest in the accounts and that the accounts could be drained by his medical expenses.

On August 14, 1979, the probate court found Nannie incompetent by reason of "advanced age-mental or physical disability-infirmity" and appointed appellants as guardians of her person and estate. Affidavits, depositions and testimony at trial indicated that the ultimate reason for the guardianship was to control Emory and his influence over Nannie.

When Nannie learned of the guardianship, she was angry and sought the help of her nephew, appellee Faires Witt, and his wife, Ethel. They contacted attorney Leslie Spillane, who discussed the matter with Nannie. Spillane arranged for her to be examined by Dr. Roger Fisher, a clinical psychologist. On October 22, 1979, Fisher interviewed Nannie for forty minutes and found she had sufficient knowledge of the nature and extent of her property to be competent to make a will. She then executed a new will naming Emory, Faires and Ethel Witt, and Nannie's grandchildren as beneficiaries.

That same day, Spillane accompanied Nannie to Community Federal Savings & Loan Association where three of her bank accounts, two joint and survivorship accounts and one P.O.D. account, were located. Nannie changed the beneficiary on all the accounts from Charles Ward to Emory Ward. On October 26, 1979, Nannie went with Ethel to Home Federal Savings & Loan where she had one joint and survivorship account. Spillane did not accompany them because she felt Nannie could handle the situation by herself. Nannie changed the beneficiary of this account from Charles Ward to Emory Ward. These changes were made without the knowledge or consent of appellants, her guardians.

On June 17, 1980, appellants, as Nannie's guardians, changed the registration of the Community Federal accounts back to the names of Nannie Ward and Charles Ward. On June 18, they did the same to the account in Home Federal.

On February 17, 1984, appellants, as Nannie's guardians, transferred all of Nannie's accounts at Community Federal to Germantown Federal Savings Bank. The transferred accounts consisted of a joint and survivorship account with Charles Ward, two accounts P.O.D. to Charles Ward, and one account in the name of Nannie only. They also transferred to Germantown Federal one joint and survivorship account with Charles Ward from

Eaton Loan & Home Aid Company. All of the funds from these accounts were placed in two certificates of deposit: (1) number 503007-6, in the name of Nannie Ward, P.O.D. to Charles Ward in the amount of $100,000, and (2) number 503008-4, in the name of Nannie and Charles Ward, joint and survivorship, in the amount of $58,198.02.

On October 5, 1984, appellants, again as Nannie's guardians, closed the account in Home Federal. The proceeds were deposited in Community Federal account number 45-000985-2, in the name of Nannie Ward and Charles Ward, joint and survivorship.

Nannie died on January 21, 1985. Her son, Emory, predeceased her. On January 29, 1986, Faires filed a complaint for declaratory judgment and injunctive relief asking the court to determine the ownership of the two certificates of deposit at Germantown Federal. By way of amended complaints, he also sought a declaratory judgment as to ownership of the account at Community Federal.

Both parties filed motions for summary judgment. On February 5, 1987, the trial court overruled appellants' motion and partially sustained Witt's motion, deciding that Witt was entitled to the proceeds of the P.O.D. certificate at Germantown Federal and to that portion of the joint and survivorship certificate which came from accounts solely in the name of Nannie Ward. In its decision, the court stated that the adjudication of incompetency of Nannie Ward established a rebuttable presumption of incompetency at the time she changed the registration of the accounts.

The case went to trial on the issues of Nannie's competency to change the registration of her accounts, ownership of the proceeds contained in the Germantown Federal certificate of deposit which came from the account at Eaton Loan, and ownership of the account at Community Federal. On January 20, 1988, the court issued its decision finding Nannie competent on the date she changed the registration of accounts. As a result, the court awarded all the proceeds of the "two certificates in question (P.O.D. & survivorship)" to Witt. This appeal followed.

Appellants present four assignments of error for review. In their first assignment, they state that the trial court erred in its decision that after an adjudication of incompetence, the incompetent person is not conclusively presumed to be incompetent to change the registration of accounts in financial institutions but is only rebuttably presumed to be incompetent. We find this assignment of error is not well-taken.

The duty of a guardian is to manage and preserve the ward's estate, to provide for the care and protection of the ward's person and to act in the best interest of the ward. R.C. 2111.13 and 2111.14. A guardian is not the "alter ego" of the ward and cannot perform all acts for the ward in the same manner as the ward would do, except for the adjudication of incompetence. A court is without power to authorize the guardian of an incompetent to enter into contracts other than those made in the management of the ward's estate and protection of his person. *Zuber* v. *Zuber* (1952), 93 Ohio App. 195, 50 O.O. 496, 112 N.E. 2d 688.

The appointment of a guardian is conclusive evidence of the ward's incapacity to do any act which conflicts with the authority given to the guardian. Therefore, there is a conclusive presumption that the ward is incompetent to enter into a binding contract or deed. *Fiorini* v. *Goss* (1921), 23 Ohio N.P. (N.S.) 303, affirmed (1923), 108 Ohio St. 115, 140 N.E. 324. However, the appointment of a guardian is only prima facie evidence of incompetency. Therefore, the guardianship is only

prima facie evidence as to the ward's capacity to marry, make a will or commit a crime. *Jordan* v. *Dickson* (1887), 10 Ohio Dec. Rep. 147, citing 150 *Wheeler* v. *State* (1878), 34 Ohio St. 394. See, also, *Lee* v. *Stephens* (App. 1942), 38 Ohio Law Abs. 431, 50 N.E. 2d 622.

Nannie's act of changing the beneficiaries of her bank accounts was not contrary to her guardians' authority. By doing so, she merely redirected where the proceeds would go after her death. This act was, in effect, a testamentary disposition similar to a will. She did not change the essential nature of her contract with the bank, nor did she change the title to or disposition of the assets, interfering with the guardian's ability to manage and preserve her estate. This case is clearly different from an attempt by a ward to make a lifetime sale or gift, which would prevent a guardian from preserving the estate.

Appellants, as guardians, have no authority to enter into a transaction which does not involve the management of the estate. Further, they have no authority to prohibit or interfere with a testamentary disposition of the ward's. This is particularly true in light of the fact that their changing of the account designation has not been shown to be in the best interest of the ward. Nannie Ward's act, as a testamentary disposition, did not violate their authority. Accordingly, the trial court was correct in deciding that Nannie was only rebuttably presumed to be incompetent and the assignment of error is overruled.

Appellants' second assignment of error states that the trial court erred in overruling their motion for summary judgment and in sustaining Witt's motion for partial summary judgment. They argue that Charles Ward was entitled to the proceeds of the certificates which were in his name

at the establishment of the guardianship as joint depositor or as P.O.D. beneficiary. We find this assignment of error is not well-taken.

The establishment of a guardianship does not destroy the joint and survivorship nature of an account, created by the ward prior to the guardianship. *Miller* v. *Yocum* (1970), 21 Ohio St. 2d 162, 50 O.O. 2d 372, 256 N.E. 2d 208. The court in *Guerra* v. *Guerra* (1970), 25 Ohio Misc. 1, 54 O.O. 2d 14, 265 N.E. 2d 818, followed and explained *Miller* v. *Yocum*, stating that "[t]o proceed in this manner accomplishes for the ward * * * the result she set out to establish during competency." *Guerra, supra*, at 7, 54 O.O. 2d at 18, 265 N.E. 2d at 823.

The depositor of a P.O.D. account retains the right to ownership and full control of that account during his or her lifetime. Following a finding of incompetency by the probate court, the depositor's ownership rights pass to the legally appointed guardian of her estate, including the right to designate a change in the registration of the account. *Miller* v. *Peoples Fed. S. & L. Assn.* (1981), 68 Ohio St. 2d 175, 22 O.O. 3d 406, 429 N.E. 2d 439.

Appellants rely on these authorities for the proposition that Nannie Ward's attempts to change the registration of the account were void and that their act of changing the registrations back to their original form was within their authority as guardians. Accordingly, they argue they are entitled to judgment as a matter of law. We disagree.

In *Miller* v. *Peoples Fed., supra,* the guardian simply deleted the beneficiary of a P.O.D. account and placed the account in his name as guardian. The Ohio Supreme Court held that a savings institution could not be held liable for substituting the guardian's name on the P.O.D. account when presented with letters of guard-

ianship. In stating that a guardian could change the registration of the account, the court indicated such a change must be in the best interest of the ward. *Id.* at 178, 22 O.O. 2d at 408, 429 N.E. 2d at 442.

In the present case, appellants did not delete the name of the beneficiary to use the funds in the management of the ward's estate. They changed the account beneficiary, giving a co-guardian a personal interest in the account, against the clear wishes of the owner. This act had no connection to the management of the estate. This is not a case where the liability of a financial institution is in issue, but rather the authority of the guardians. They clearly overstepped their authority if Nannie was competent to change the registration of the accounts in the first place. They made a testamentary disposition of her property in violation of her clearly stated wish that her money be used to provide for her son Emory. This act can in no way be construed to be in the ward's best interest.

The same reasoning applies to the joint and survivorship accounts. A joint and survivorship account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit unless there is clear and convincing evidence of a different intent. *In re Estate of Thompson* (1981), 66 Ohio St. 2d 433, 20 O.O. 3d 371, 423 N.E. 2d 90, paragraph one of the syllabus. Nannie was the sole contributor to all the accounts, and thus the sole owner. There is no clear and convincing evidence of a different intent. Charles Ward had no lifetime interest in the account. Thus, the survivorship feature, a testamentary disposition, was the only interest of the joint depositor.

The joint and survivorship accounts did retain their joint and survivorship nature after Nannie's ad-judication of incompetency. Therefore, Nannie's status as sole owner of the account during her lifetime did not change after guardianship. She alone could change the registration of the account, naming a new beneficiary, as long as she was competent to do so. Her guardians may have had authority to maintain the joint and survivorship status or to delete the joint and survivorship feature altogether if it was in the best interest of the ward. However, they had no authority to change the registration of the account, giving one of them a personal interest, when it clearly violated Nannie's wishes.

Thus, the factual dispute remained as to whether Nannie was competent on October 22 and 26, 1979 to change the registration of the accounts. This issue needed to be determined before a court could decide whether appellants were entitled to judgment as a matter of law. A genuine issue of material fact remained and the trial court was correct in overruling their motion for summary judgment.

The trial court then granted partial summary judgment to Witt as to the P.O.D. certificate at Germantown Federal based on the lack of signature cards for the account. Affidavits of the bank officers indicate that signature cards for the P.O.D. certificate at Germantown Federal were never returned by appellants. Appellants deny this, but presented no Civ. R. 56 evidence in the motion for summary judgment to raise a genuine issue of fact.

R.C. 2131.10 requires a written contract in order to establish a P.O.D. account. However, it does not define the term "written contract." The guardians claim that the term "written contract" simply requires a contract with all its terms in writing. It does not require that the signatures of both parties appear on the written document. They state that the certificate of

deposit fulfills the requirement of the statute since it is a written contract containing all the terms of the agreement. We disagree.

Although a P.O.D. account is contractual in nature, it has a special purpose. It allows a person to make a testamentary disposition of assets without following the formalities of the Statute of Wills, R.C. Chapter 2107. Although it is an exception to the Statute of Wills, one of the basic requirements of the Statute of Wills cannot be ignored; that is, the requirement of a writing signed by the testator evidencing his intent. Since a P.O.D. account is testamentary in nature, it follows that the term "written contract" means a writing signed by the owner of the funds showing the intent to dispose of property in contravention of his or her will or the statutes of descent and distribution.

A certificate of deposit is written acknowledgement by a bank of receipt of a sum of money with a promise to repay according to the certificate's terms. R.C. 1303.03(B)(3). It may obligate the bank, but it in no way evidences the intent of the owner of the account. Further, the affidavits of the bank officers indicate that the bank considers the signature cards, and not the certificate, to establish the contract for the account. Accordingly, we find that there was no written contract for the P.O.D. certificate at Germantown Federal. No valid P.O.D. account was created and the trial court was correct in deciding that Witt was entitled to the funds in that certificate as a matter of law. Appellants' second assignment of error is overruled.

Appellants' third assignment of error states that the trial court erred in deciding after trial that Witt was entitled to all the proceeds in certificate of deposit number 503008-4 at Germantown Federal held in the name of Nannie Ward and Charles R. Ward,

joint with rights of survivorship. We find this assignment of error is not well-taken.

Appellants again argue that Nannie's act of changing the registration of the accounts was void and that they had proper authority to reregister the accounts. Further, they argue that no evidence at trial was presented to prove that Nannie did not intend to create a survivorship interest for Charles Ward. We disagree.

As we have already stated, if Nannie was proved to be competent on October 22 and 26, 1979, her act in changing the registration of the accounts was not void, and the actions of appellants in reregistering the accounts exceeded their authority as guardians. The trier of fact determined that sufficient evidence was presented to rebut the presumption that Nannie was incompetent at that time. There is no abuse of discretion and the trial court properly awarded the funds to Witt.

Sums remaining on deposit at the death of a party to a joint and survivorship account belong to the surviving party against the estate of the decedent unless there is clear and convincing evidence of a different intent at the time of creation. *Thompson, supra,* paragraph two of the syllabus. The holding of *Thompson* creates a presumption that, upon the death of a depositor to a joint and survivorship account, the survivor is entitled to the proceeds of the account. The presumption may be rebutted by clear and convincing evidence of a different intent by the deceased joint depositor with the burden of proof on the party attempting to rebut the presumption. *Gillota* v. *Gillota* (1983), 4 Ohio St. 3d 222, 4 OBR 576, 448 N.E. 2d 802.

The evidence at trial clearly indicated that Nannie's prime concern was the care of Emory Ward. All the accounts were originally in her name and Emory's so that he would be pro-

vided for in the event of her death. The reason Charles Ward's name was placed on the accounts was to allow Emory to receive Medicaid from the state. Nannie changed the account back to Emory's name when she discovered appellants had placed her in a guardianship without her consent and when she had reason to doubt they would respect her wishes as to protecting Emory. The evidence clearly shows she wanted Emory to have the money, not Charles. The fact that Charles was named in the account was simply a way of protecting Emory, not a demonstration of intent to give the survivorship interest to Charles. The trial court did not abuse its discretion in awarding the entire amount of the joint and survivorship certificate, including those funds which come from the account at Eaton Loan, to Witt.

It is true as appellants contend that the trial court did not specifically mention in its decision the joint and survivorship account in the name of Nannie Ward and Charles Ward originally located at Home Federal and transferred to Community Federal. However, the reasoning used in determining that Witt was entitled to the funds in the joint and survivorship account at Germantown Federal is equally applicable to the joint and survivorship account at Community Federal. The court heard evidence about this account and a ruling that Witt is entitled to the funds in this account is implicit in its decision. The fact that it is not explicitly mentioned seems to be an oversight, especially in light of the number of bank accounts involved in this cause of action. Accordingly, pursuant to App. R. 12(B), we enter judgment as a matter of law in favor of Witt as to the joint and survivorship account located at Community Federal. The third assignment of error is overruled.

Appellants' fourth assignment of error states that the trial court erred in its decision that Nannie was competent on October 22 and 26, 1979 to change the registration of her accounts at financial institutions as such decision was against the manifest weight of the evidence. We find this assignment of error is not well-taken.

Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 10 OBR 408, 461 N.E. 2d 1273; *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578. In reviewing the record, we find there is competent, credible evidence to support the trial court's decision that Nannie Ward was competent on October 22 and 26, 1979. Although there is evidence to the contrary, matters of the weight and credibility of evidence are for the trier of fact to resolve. *Seasons Coal Co., supra.* Accordingly, the fourth assignment of error is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

JONES, P.J., HENDRICKSON and KOEHLER, JJ., concur.