**AFCO CREDIT CORPORATION et al.**

**v.**

**BRANDYWINE SKI CENTER, INC. et al., Appellees;**

**American Home Assurance Company, Appellant.**

[Cite as *AFCO Credit Corp. v. Brandywine Ski Ctr., Inc.* (1992), 81 Ohio App.3d 217.]

Court of Appeals of Ohio,
Summit County.

No. 15128.

Decided Jan. 2, 1992.

*Leland D. Cole, E. Lee Wagoner, Jr.,* and *Mark H. Ludwig,* for appellees.
*Richard R. Strong,* for appellant.

CACIOPPO, Presiding Judge.

This appeal stems from the trial court's decision awarding appellee a return of its insurance premium. We affirm in part and reverse in part.

Brandywine Ski Center, Inc. ("Brandywine"), appellee-third-party plaintiff, operated a ski resort in Summit County. American Home Assurance Company, Inc. ("American Home"), appellant-third-party-defendant, provided liability insurance to Brandywine during 1986–1987. This policy is the center of the present controversy.

For several years prior to the issuance of this policy, Brandywine obtained insurance through the services of R.T. Driscoll and Associates, Inc. ("Driscoll"). In the summer or fall of 1986, Driscoll informed Brandywine that its insurance carrier would no longer provide coverage for Brandywine. Brandywine instructed Driscoll to obtain insurance from another insurer. Driscoll contacted Kendall Insurance Company ("Kendall") in an effort to obtain alternative coverage.

Driscoll had a brokerage agreement with Kendall. This agreement stated that Driscoll was not an agent of Kendall. Kendall was an agent of American Home, with the exclusive right to sell American Home's insurance coverage to ski areas.

Brandywine instructed Driscoll to obtain insurance coverage in a specific form. Specifically, Brandywine wanted coverage which would not require it to pay, in the event of a claim, any amounts for expenses or legal fees. Driscoll, following negotiations with Kendall, issued a binder to Brandywine. Kendall issued a second binder to Brandywine in January 1987.

Brandywine finally received a copy of the policy in March 1987. At that time, Brandywine expressed its dissatisfaction regarding the policy because it contained terms which did not conform to those which Brandywine instructed Driscoll to obtain, including expense and legal fees provisions. Brandywine and Driscoll attempted to resolve this dispute, but could not reach any agreement.

Brandywine, with Driscoll's help, financed a portion of the premium through AFCO Credit Corporation ("AFCO"). After continued dissatisfaction with the insurance policy, Brandywine stopped making payments on its loan to AFCO. AFCO then filed suit against Brandywine to recover the balance due on the note. Brandywine filed a third-party complaint against American Home, Driscoll, and Kendall. When the matter finally came to trial, only Brandywine and American Home were involved.

The trial court found that there was no meeting of the minds between Brandywine and American Home. Therefore, the trial court ordered American Home to return the policy premium amount to Brandywine, less $3,000 spent by American Home to settle a claim. It is from this judgment that American Home appeals, raising seven assignments of error.

Assignments of Error I and IV

"I. The trial court erred in concluding that there was no meeting of the minds between Brandywine, acting through its president, Mickey Dover, and American Home Assurance Company with respect to the terms and conditions of the contract of insurance at issue."

"IV. The court erred in imposing an equitable remedy in this case when Brandywine had an adequate remedy at law in the nature of a claim against Driscoll and Associates, Inc. form [sic] money damages."

The first and fourth assignment of error are related and will be discussed together.

American Home argues that the trial court erred in finding that there was no meeting of the minds. American Home bases its argument on its assertion that Driscoll was Brandywine's agent. We do not agree.

R.C. 3929.27 states:

"A person who solicits insurance and procures the application therefor shall be considered as the agent of the party, company, or association thereafter issuing a policy upon such application or a renewal thereof, despite any contrary provisions in the application or policy."

This section clearly states that one who solicits and procures insurance must be considered to be the agent of the insurance company. Applying the facts in the case at bar to this statute, Driscoll must be considered the agent of American Home, not Brandywine.

American Home argues that Driscoll's knowledge must be imputed to Brandywine because of their principal-agent relationship. Because of R.C. 3929.27, however, American Home's argument must fail. This statute makes Driscoll the agent of American Home, not Brandywine.

Any knowledge which Driscoll had could not be imputed to Brandywine. Therefore, Brandywine and American Home did not have a meeting of the minds. The trial court did not err.

In the fourth assignment of error, American Home argues that Brandywine had an adequate remedy at law and, therefore, the court erred in imposing an equitable remedy. The remedy at law asserted by American Home is an action for damages by Brandywine against Driscoll. We do not agree.

Driscoll was not Brandywine's agent, he was American Home's agent. Therefore, Brandywine would not have, as American Home suggests, any

cause of action against Driscoll as its agent. Because Brandywine did not have an adequate remedy at law, the court did not err.

The first and fourth assignments of error are overruled.

### Assignment of Error II

"The trial court erred in implicitly concluding that the terms and conditions of the policy contested by Third–Party Plaintiff/Appellee, Brandywine, were material variances justifying the conclusion that no meeting of the minds occurred when in fact Brandywine waived those terms and conditions and ratified the policy."

American Home asserts in its second assignment of error that Brandywine ratified the nonconforming contract, thus making it enforceable. We do not agree.

■ Ratification has been defined as the approval by act, word, or conduct of that which was improperly done. *Gross v. Wiener* (1913), 23 Ohio C.C. (N.S.) 518, 527, 34 Ohio C.D. 349, 358. The intention to ratify is an essential element, and is at the foundation of the doctrine of ratification. *Jeffords v. John Hancock Mut. Life Ins. Co.* (App.1935), 19 Ohio Law Abs. 701, 702.

■ American Home argues that Brandywine ratified the contract by accepting the benefit of insurance coverage in May 1987. At that time, Brandywine submitted a claim to American Home under the policy. At the same time, Brandywine continued to object to the terms of the policy as the parties attempted to negotiate a resolution of this problem. Brandywine's actions did not indicate an intent to ratify. Therefore, the court did not err by not finding that Brandywine did not ratify the contract.

The second assignment of error is overruled.

### Assignment of Error III

"The trial court erred in failing to find that Brandywine's claim for relief was barred by laches."

■ American Home asserts in this assignment of error that Brandywine's action was barred by laches. We do not agree.

Laches is an equitable doctrine. The Supreme Court of Ohio has held that "[d]elay in asserting a right does not of itself constitute laches, and in order to successfully involve the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim." *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, paragraph three of the

syllabus. The prejudice suffered by the delay must be material. *Wright v. Oliver* (1988), 35 Ohio St.3d 10, 11, 517 N.E.2d 883, 884.

The record does not indicate that American Home was materially prejudiced by any period of delay occasioned by Brandywine's ongoing negotiations to settle this dispute. American Home also has not indicated any material prejudice it suffered as a result of any delay. Therefore, the trial court did not err by not allowing the defense of laches.

The third assignment of error is overruled.

### Assignments of Error V and VII

"V. The trial court erred in ordering that the premium paid for the policy at issue be recovered by Brandywine in that Brandywine produced no evidence that the policy premium was not reasonably earned by the provision of coverage which it utilized and because it failed to prove any prejudice whatsoever due to the form of deductible, policy term, and letter of credit requirement (not abided and which was waived by American Home)."

"VII. The trial court erred in failing to award American Home the full premium in consideration of its provision of coverage."

■ The fifth and seventh assignments of error are related and will be considered together.

In its fifth assignment of error, American Home asserts that Brandywine failed to prove it was entitled to recover its premium as damages. We do not agree. Brandywine presented evidence to the court which demonstrated that no contract existed between the parties. Because no contract was formed, Brandywine paid its premium without any contractually enforceable obligation to do so. The court, therefore, did not abuse its discretion by ordering American Home to return the premium paid to Brandywine.

■ In its seventh assignment of error, American Home asserts that the trial court erred in failing to find that it was entitled to retain the full premium. The court considered the evidence presented, and made the following finding:

"The Court further finds that since American Home Insurance [*sic,* Assurance] Company did provide coverage for the period December 6, 1986 through April 15, 1987, it is entitled to be compensated for such coverage on the basis of quantum meruit. The only evidence before the Court as to value, costs, loss or expense incurred by American Home is the $3,000.00 expended in payment of one claim. * * * "

American Home had the burden of proving that it was entitled to a quantum meruit recovery. American Home proved that it paid a claim of $3,000. After

reviewing the trial court's findings, we do not believe the court abused its discretion.

The fifth assignment of error is overruled.

The seventh assignment of error is overruled.

### Assignment of Error VI

"The trial court erred in granting prejudgment interest from April 15, 1987."

In its sixth assignment of error, American Home asserts that the trial court erred in granting prejudgment interest from April 15, 1987. We agree.

 Where the amount of a debt is clear, and the only question is whether the plaintiff is entitled to recover, interest runs from the time it was payable. *Mahon–Evans Realty, Inc. v. Spike* (1986), 33 Ohio App.3d 268, 270, 515 N.E.2d 953, 955. In the case at bar, the amount of debt was not clear until the court entered its judgment.

The trial court erred in ordering prejudgment interest from the date of the termination of the contract, April 15, 1987. Accordingly, the sixth assignment of error is well taken and this court orders that interest shall accrue from the date of the trial court's judgment at the statutory rate. App.R. 12(B).

The judgment of the trial court is affirmed in all other respects.

*Judgment affirmed in part*
*and reversed in part.*

REECE, J., concurs.

COOK, J., dissents.

COOK, Judge, dissenting.

I would reverse the judgment of the trial court and find that Brandywine was not entitled to rescission and that it did not prove any breach of contract by American Home resulted in damages to it.

The trial court erred by granting an equitable remedy, rescission, where there was no showing of substantial nonperformance or a material breach. Not every breach of a contract or failure exactly to perform entitles the other party to rescind. To warrant rescission, the breach must be so substantial and so fundamental as to defeat the purpose of the contract.

Brandywine had the burden of proof on these issues. The court found substantial performance in that Brandywine had coverage for the ski season—the period of time when Brandywine had the greatest risk of loss by reason of injuries to skiers. With regard to proof of a material breach, the amount of

damages is immaterial provided it is substantial. Brandywine suffered no damage. There was no proof that any contract variation had a monetary consequence. Brandywine received exactly what it wanted without any expense other than the agreed premium:

(1) Brandywine did not want to be charged fees and expenses in the event of a claim—it was not.

(2) Brandywine did not want to provide a letter of credit—it did not.

(3) Brandywine did not want to buy coverage for the summer from another carrier, pay additional premium for the remaining months of the year, or have a claim for which it was not covered after April 15—it did not.

Without proof of substantial nonperformance or a material breach evidenced by substantial damages resulting from the breach, Brandywine was not entitled to rescission or return of the premium. The variations from what it claims it contracted for do not go to the root of the contract. The real undertaking was coverage for skiing accidents. That is what Brandywine ordered. If American Home wrote life insurance, that would be a thing different in substance from what Brandywine wanted. The provisions demanded by Brandywine which were not included in the deal were collateral to the contract.

Whether American Home put on proof in its counterclaim for quantum meruit is immaterial to Brandywine's burden to show its entitlement to a return of the premium after having the benefit of coverage.

The reasoning of the trial court in determining that rescission is appropriate is inconsistent. The court found that there was a contract in that coverage was provided; even a claim was submitted and adjusted by the carrier. Then the court concluded to the contrary that there was no contract because there was "no meeting of the minds."

For the foregoing reasons, I would find the fifth assignment of error well taken, reverse the judgment and enter final judgment for the third-party defendant.