[Cite as *Doe v. Contemporary Servs. Corp.*, 2019-Ohio-635.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 107229

---

### JOHN DOE, ET AL.

#### PLAINTIFFS-APPELLANTS

vs.

### CONTEMPORARY SERVICES
### CORPORATION, ET AL.

#### DEFENDANTS-APPELLEES

---

### JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-18-893852

**BEFORE:** Celebrezze, J., E.T. Gallagher, P.J., and Headen, J.

**RELEASED AND JOURNALIZED:** February 21, 2019

**ATTORNEYS FOR APPELLANTS**

Mark R. Koberna
Sean Koran
Sonkin & Koberna Co., L.P.A.
3401 Enterprise Parkway, Suite 400
Beachwood, Ohio 44122


**ATTORNEYS FOR APPELLEES**

Jeffrey Keiper
Sabrina L. Brown
Jackson Lewis, P.C.
Park Center Plaza I, Suite 400
6100 Oak Tree Boulevard
Cleveland, Ohio 44131

Stephen R. Beiting
3550 West Market Street, Suite 100
Akron, Ohio 44333


FRANK D. CELEBREZZE, JR., J.:

{¶1} This cause came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1.

{¶2} Plaintiffs-appellants, John Doe, by and through his legal guardians Jane and James Doe (collectively "appellants"),[1] bring the instant appeal challenging the trial court's judgment granting the motion to stay proceedings and compel arbitration filed by defendants-appellees, Contemporary Services Corporation, Inc., regional manager Rick Brown, and manager Steven Carter (hereinafter "CSC"). Specifically, appellants argue that the trial court erred by granting

---

[1] Although the trial court denied appellants' motion for a preliminary protective order in which appellants sought to proceed in the civil action anonymously, we will not identify appellants by name out of an abundance of caution for their privacy interests.

CSC's motion because John lacked contractual capacity and thus no valid and enforceable arbitration agreement existed, and that Jane did not ratify and could not ratify John's arbitration agreements. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶3} The instant appeal arose from an employment-related dispute between appellants and CSC. CSC is a California corporation that operates in the state of Ohio. CSC provides crowd management services at large events, including professional sporting events and concerts.

{¶4} John suffers from multiple disabilities, including autism, OCD,[2] and Dandy-Walker variant.[3] Jane and James are John's parents. John was adjudicated incompetent on November 12, 2010, in Cuyahoga P.C. No. 2010-GDN-0159987. At this time, the court appointed James as John's guardian. Jane was subsequently appointed as John's guardian on October 29, 2015.

{¶5} John began working for CSC on October 15, 2015. He worked event security at entrance points to various facilities, checking attendees and their belongings for weapons and other contraband. John also worked inside various venues looking for inappropriate behavior.

{¶6} When he began his employment on October 15, 2015, John signed an employment application which provided, in relevant part, "I also agree that I may be required, as a condition of my employment, and for consideration for work at a company client's facility, be required to sign a[n] * * * arbitration agreement." John also signed an arbitration agreement at this time that covered potential claims arising out of his employment with CSC. Jane was present with John when he signed the 2015 arbitration agreement.

---

[2] Obsessive compulsive disorder.

[3] A disorder resulting in a cerebellar cyst on John's brain.

**{¶7}** As noted above, Jane was appointed as John's guardian on October 29, 2015. Thereafter, Jane began working with CSC in July 2016.

**{¶8}** In May 2017, CSC updated its arbitration agreement. The updated arbitration agreement, titled "Mutual Agreement to Arbitrate Claims," provides, in relevant part,

1. Claims Covered by This Agreement

EMPLOYEE and EMPLOYER mutually agree to the resolution of all claims or controversies arising out of EMPLOYEE's employment or its termination (collectively, the "Claims") that either party may have against the other * * * The Claims covered by this provision include, without limitation, claims arising out of contract law, tort law, * * * California Fair Employment and Housing Act (which includes *claims for discrimination or harassment on the basis of* age, race, color, ancestry, national origin, *disability, medical condition, mental status * * *), any similar state discrimination law*, * * * Americans with Disabilities Act, * * * and claims for violation of any federal state, or other governmental law, statute, regulation or ordinance.

The parties understand that, by this Agreement, they are waiving their rights to have a Claim adjudicated by a court or jury.

* * *

3. Arbitration

* * *

By entering into this Agreement, the parties waive their right to commence, or be a party to, any class, collective or representative action, or to bring jointly or collectively any Claim, and the arbitrator shall have no authority to proceed with arbitration on such a basis.

(Emphasis added.) *See* Exhibit C to defendants' brief in opposition to plaintiffs' motion for a preliminary protective order filed under seal, filed on April 2, 2018.

**{¶9}** At the request of CSC's operations manager Lauren Schuck ("Schuck"), John and Jane were required to sign the updated arbitration agreements. On July 1, 2017, before a "U2"

concert, a private meeting was held between John, Jane, Schuck, and CSC's human resources manager Trayshawna Fason. During this meeting, both John and Jane received, reviewed, and signed CSC's updated arbitration agreement.

{¶10} Several issues arose during the course of John's employment with CSC. Appellants allege that CSC was not receptive to several reasonable requests made in regards to providing accommodations for John's disabilities. At one point, John was no longer permitted to work at events that required out-of-town travel. In August 2017, John was restricted to working at Cleveland Browns home games. As a result of this restriction, appellants allege that John suffered lost earnings, emotional distress, and stress-induced physical pain.

{¶11} Based on the issues that arose during John's employment with CSC, appellants filed a complaint against CSC on March 1, 2018. Appellants asserted claims for disability discrimination, hostile work environment, retaliation, aiding and abetting, and lost wages.

{¶12} On April 2, 2018, CSC filed a motion to stay proceedings and compel arbitration. Appellants filed a brief in opposition on April 16, 2018. CSC filed a reply brief in support of the motion to stay and compel arbitration on April 23, 2018. Appellants filed a sur-reply opposing CSC's motion to stay and compel arbitration on May 1, 2018.

{¶13} On May 10, 2018, the trial court granted CSC's motion to stay proceedings and compel arbitration. The trial court concluded, in relevant part,

> a guardian may consent to or ratify contracts that the ward enters into. *In re Guardianship of Allen*, 50 Ohio St.3d 142[, 552 N.E.2d 934] (1990). [CSC argues], and the Court agrees, that [John's] guardian and next friend [Jane] ratified and consented to the 2017 Mutual Agreement to Arbitrate Claims by not only being present when it was signed by [John], but by also signing an identical document in her own capacity.

**{¶14}** It is from this judgment that appellants filed the instant appeal on May 24, 2018. Appellants assign one error for review:

I. The trial court erred by granting [CSC's] motion to stay proceedings and compel arbitration.

## II. Law and Analysis

### A. Motion to Compel Arbitration

**{¶15}** In their sole assignment of error, appellants argue that the trial court erred by granting CSC's motion to stay proceedings and compel arbitration.

### 1. Standard of Review

The applicable standard of review for a trial court's ruling on a motion to stay and compel arbitration depends upon "the type of questions raised challenging the applicability of the arbitration provision." *Kaminsky v. New Horizons Computer Learning Ctr. of Cleveland*, [2016-Ohio-1468, 62 N.E.3d 1054, ¶ 12 (8th Dist.)], citing *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543. The issue of whether a party has agreed to submit an issue to arbitration or questions of unconscionability are reviewed under a de novo standard. *McCaskey* at ¶ 7-8. "Under a de novo standard of review, we give no deference to a trial court's decision." *Brownlee v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 97707, 2012-Ohio-2212, ¶ 9, citing *Akron v. Frazier*, 142 Ohio App.3d 718, 721, 756 N.E.2d 1258 (9th Dist.2001).

*Wisniewski v. Marek Builders, Inc.*, 2017-Ohio-1035, 87 N.E.3d 696, ¶ 5 (8th Dist.). On the other hand, an abuse of discretion standard of review applies in limited circumstances, such as the issue of whether a party has waived its right to arbitrate a given dispute. *Kaminsky* at *id.*,

citing *McCaskey* at ¶ 7, and *Milling Away, L.L.C. v. UGP Properties, L.L.C.*, 8th Dist. Cuyahoga No. 95751, 2011-Ohio-1103, ¶ 8.

{¶16} In the instant matter, the parties dispute the applicable standard of review. Appellants argue that the de novo standard of review applies because the appeal involves a question of law — whether the arbitration agreement was void or valid and enforceable. CSC, on the other hand, acknowledges that the issue of whether John had contractual capacity to enter into an arbitration agreement is a question of law. However, CSC argues that the abuse of discretion standard applies because the "central issue" in this appeal involves a question of fact — whether Jane ratified John's arbitration agreement.

> "[B]efore a party may be bound by the terms of an arbitration agreement, there must in fact be a contract which requires the arbitration of the parties' disputes and claims." *Koch v. Keystone Pointe Health & Rehab.*, 9th Dist. Lorain No. 11CA010081, 2012-Ohio-5817, ¶ 9. Whether a contract exists is a matter of law. *Zelina v. Hillyer*, 165 Ohio App.3d 255, 2005-Ohio-5803, 846 N.E.2d 68[, ¶ 12] (9th Dist.).

*Kallas v. Manor Care of Barberton*, 9th Dist. Summit No. 28068, 2017-Ohio-76, ¶ 8. The Tenth District has recognized, in a summary judgment context, that the issue of "[w]hether [a] contract was ratified (or accepted) is a question of fact to be determined by the trial court." *Bailey v. Midwestern Enters.*, 103 Ohio App.3d 181, 185, 658 N.E.2d 1120 (10th Dist.1995).

{¶17} Regardless of whether we apply the abuse of discretion or de novo standard of review, for the reasons set forth below, we find that the trial court did not err in granting CSC's motion to compel arbitration. *See Bentley v. Cleveland Browns Football Co.*, 194 Ohio App.3d 826, 2011-Ohio-3390, 958 N.E.2d 585, ¶ 13 (8th Dist.).

"Arbitration is a favored form of dispute settlement under Ohio law and federal law." *Fifth Third Bank v. Rowlette*, 10th Dist. Franklin No. 13AP-337, 2013-Ohio-5777, ¶ 7, citing *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 500, 692 N.E.2d 574 (1998); *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008). Despite this general policy favoring arbitration, however, courts have recognized that arbitration is a matter of contract, and a party cannot be compelled to submit a dispute to arbitration unless he [or she] has agreed to do so. *Benjamin v. Pipoly*, 155 Ohio App.3d 171, 2003-Ohio-5666, 800 N.E.2d 50, ¶ 32 (10th Dist.), ("In Ohio, a party to an action generally cannot be required to arbitrate a dispute between itself and a second party unless the parties have previously agreed in writing to arbitration of those disputes"); *see also Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 687 N.E.2d 1352 (1998); *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The party seeking to compel arbitration bears the burden of establishing the existence of an enforceable arbitration agreement between the party against whom the moving party seeks enforcement.

Ohio's strong public policy favoring arbitration is codified in Chapter 2711 of the Revised Code. *Westerfield v. Three Rivers Nursing & Rehab. Ctr., L.L.C.*, 2d Dist. Montgomery No. 25347, 2013-Ohio-512, ¶ 17. Under R.C. 2711.02(B), on application of one of the parties, a trial court may stay litigation in favor of arbitration pursuant to a written arbitration agreement. *Taylor Bldg.* [*Corp. of Am. v. Benfield*], 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 27.

*Kaminsky* at ¶ 14-15.

{¶18} R.C. 2711.02(B) provides:

If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance

with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

## 2. Scope of Appeal

**{¶19}** In the instant matter, as noted above, the record reflects that John signed arbitration agreements on October 15, 2015, and July 1, 2017. The parties' appellate briefs raise the following two issues: (1) whether John had contractual capacity to enter into the 2015 or 2017 arbitration agreements, and (2) whether Jane, as John's guardian, ratified the 2017 arbitration agreement during the July 1, 2017 meeting.

**{¶20}** In granting CSC's motion to stay and compel arbitration, the trial court focused its analysis on the enforceability of the 2017 arbitration agreement and whether this agreement was ratified by Jane. The trial court did not address the first issue, regarding John's contractual capacity, or focus on the enforceability of the 2015 arbitration agreement. Accordingly, our analysis in this appeal will be limited to the trial court's determination that the 2017 arbitration agreement was enforceable based on the fact that it had been ratified by Jane.

## 3. Ratification

**{¶21}** It is well-established that a ward, an individual placed under the care of a guardianship, lacks contractual capacity. Accordingly, a ward cannot, on his or her own, bind his or her guardianship estate to contractual obligations. *Sovak v. Spivey*, 155 Ohio App.3d 479, 2003-Ohio-6717, 801 N.E.2d 896, ¶ 24 (8th Dist.), citing *In re Allen*, 50 Ohio St.3d at 146, 552 N.E.2d 934; *see Huntington Natl. Bank v. Toland*, 71 Ohio App.3d 576, 578, 594 N.E.2d 1103 (10th Dist.1991), citing *Fiorini v. Goss*, 23 Ohio N.P. 303, 1921 Ohio Misc. LEXIS 18 (1921), *aff'd*, *Goss v. Fiorini*, 108 Ohio St. 115, 140 N.E. 324 (1923) ("Applying *Fiorini*, courts have consistently held that the appointment of a guardian operates as a conclusive presumption of

contractual incapacity in any action to enforce contracts made by the ward during the period of legal guardianship, divesting the ward of any contractual capacity."). "'The appointment of a guardian is conclusive evidence of the ward's incapacity to do any act which conflicts with the authority given to the guardian. Therefore, there is a conclusive presumption that the ward is incompetent to enter into a binding contract or deed.'" *Sovak* at ¶ 24, quoting *Witt v. Ward*, 60 Ohio App.3d 21, 23, 573 N.E.2d 201 (12th Dist.1989).

{¶22} In *In re Allen*, however, the Ohio Supreme Court recognized an exception to the general rule: "[a] ward cannot on [his or] her own bind [his or] her guardianship estate to obligations base[d] upon contract, *unless ratified by the guardian*." (Emphasis added.) *Id.* at 146. Accordingly, in the appeal before this court, the dispositive issue is whether Jane, as John's guardian, ratified the updated 2017 arbitration agreement between John and CSC.

{¶23} Appellants argue that Jane did not ratify, either expressly or implicitly, John's 2017 arbitration agreement. In support of their position, appellants emphasize that (1) neither Jane nor James took any affirmative action, such as signing or initialing John's 2017 arbitration agreement, indicating their assent thereto, and (2) Jane's mere presence in the same room as John at the time he signed the agreement and her failure to ask questions or voice objections to John's agreement did not constitute ratification.

{¶24} Appellants also argue that Jane could not ratify John's 2017 arbitration agreement because John lacked contractual capacity, and as a result, his 2017 arbitration agreement was void. In support of this argument, appellants rely on the dissent in *In re Allen*, 50 Ohio St.3d 142, 552 N.E.2d 934. Furthermore, regarding the exception set forth in *In re Allen*, appellants contend that the "unless ratified by a guardian" language is dicta.

**{¶25}** On the other hand, CSC argues that Jane consented to/ratified the 2017 arbitration agreement. In support of this argument, CSC emphasizes that (1) Jane was present at the meeting on July 1, 2017, during which John signed the arbitration agreement, (2) Jane's silence, inaction, and failure to ask questions or raise objections to John's arbitration agreement constituted ratification, and (3) that Jane had knowledge of all material facts related to John's arbitration agreement because she reviewed and signed the same arbitration agreement pertaining to her employment with CSC. After reviewing the record, we agree with CSC.

> "Ratification * * * [is] the approval by act, word, or conduct of that which was improperly done." *Paterson v. Equity Trust Co.*, 9th Dist. [Lorain] No. 11CA009993, 2012-Ohio-860, ¶ 21, quoting *AFCO Credit Corp. v. Brandywine Ski Ctr., Inc.*, 81 Ohio App.3d 217, 221, 610 N.E.2d 1032 (9th Dist.1992). In other words, "[a] principal may ratify the unauthorized acts of his agent[.]" *Paterson* at ¶ 21. However, before ratification may occur, "the ratifying party must know what actions [he] is ratifying." *Wells Fargo Bank, N.A. v. Byrd*, 178 Ohio App.3d 285, 2008-Ohio-4603, ¶ 13, 897 N.E.2d 722 (1st Dist.), citing *Lithograph Bldg. Co. v. Watt*, 96 Ohio St. 74, 86, 117 N.E. 25 (1917) ("before the principal can be held to ratify the unauthorized acts of his agent, it must appear that he had knowledge of all material facts"). "To establish ratification, it must be shown by conduct of the principal, done with full knowledge of the facts, which manifests his intention to ratify the unauthorized transaction." *Meyer v. Klensch*, 114 Ohio App. 4, 6, 175 N.E.2d 870 (1st Dist.1961).

(Emphasis deleted.) *Koch*, 9th Dist. Lorain No. 11CA010081, 2012-Ohio-5817, at ¶ 15. In *Koch*, the Ninth District went on to hold that the trial court erred by granting the defendant's motion to stay proceedings and compel arbitration:

> there was [no evidence indicating] that [the agent] was aware that [his wife] had ever signed an arbitration agreement on [behalf of the estate]. Moreover, there was no evidence to indicate that [an agent] was even aware of the existence of any prior arbitration agreement, let alone the terms of such an agreement. Under these circumstances, to the extent that the trial court premised its order granting the motion to compel arbitration on a finding that [the agent] ratified the arbitration agreement signed by [the agent's wife], such a finding was unreasonable.

Based on the above analyses, no contract existed which bound the parties to arbitrate any disputes or claims. Therefore, the trial court erred by granting [defendant's] motion to stay the proceedings and compel arbitration.

*Id.* at ¶ 18-19.

**{¶26}** In the instant matter, unlike *Koch*, the record reflects that Jane was aware of (1) the existence of the 2017 arbitration agreement, as she was present at the July 1, 2017 meeting during which the updated agreement was presented to and signed by John, and she also had to sign an arbitration agreement pertaining to her employment with CSC; and (2) the terms of John's 2017 arbitration agreement, as she reviewed and signed an arbitration agreement of her own.

**{¶27}** Regarding appellants' argument that Jane's silence and/or inaction during the July 1, 2017 meeting did not constitute ratification of John's arbitration agreement, appellants direct this court's attention to *Amato v. Heinika Ltd.*, 8th Dist. Cuyahoga No. 84479, 2005-Ohio-189. In *Amato*, the plaintiff sought to recover against an employer under a respondeat superior theory for an assault committed by one of the employer's employees. The plaintiff argued that the employer ratified the employee's actions by retaining the employee after the assault took place. *Id.* at ¶ 3. This court recognized that the Ohio Supreme Court has held that ""negligence or inaction alone is insufficient to show ratification of an agent's unauthorized act, but ratification must follow knowledge of the facts."" *Id.* at ¶ 8, quoting *Brooks v. Bell*, 1st Dist. Hamilton No. C-970548, 1998 Ohio App. LEXIS 1476 (Apr. 10, 1998), quoting *Morr v. Crouch*, 19 Ohio St.2d 24, 29, 249 N.E.2d 780 (1969). In applying the *Morr* rationale, the *Amato* court held that "inaction or silence alone is not enough to prove ratification of an agent's unauthorized action,

but that *ratification can be shown by inaction or silence where the principal is fully informed of all of the material facts to the agent's actions*." (Emphasis added.) *Amato* at ¶ 8.

{¶28} Albeit in a different context, in the instant matter, as noted above, Jane was present during the July 1, 2017 meeting during which the 2017 arbitration agreement was presented to, reviewed, and signed by John. Jane was fully aware of all of the material facts regarding John's arbitration agreement, as she received, reviewed, and signed an arbitration agreement of her own. Accordingly, Jane's inaction and silence during this meeting can reasonably be construed as Jane's ratification of John's arbitration agreement.

{¶29} Appellants' reliance on the *In re Allen* dissent is misplaced. The dissent provides, in relevant part,

> With regard to the words "unless ratified by the guardian" found in paragraph one of the syllabus, it should be elementary that a guardian cannot ratify a contract that cannot, in the first place, exist. The guardian may very well accept as binding that which the ward was brought about, but such action then becomes the contract of the guardian — not that of the ward as "ratified by the guardian."

*In re Allen*, 50 Ohio St.3d at 148, 552 N.E.2d 934 (Douglas, J., dissenting).

{¶30} As an initial matter, the dissenting opinion does not carry the full force of law or precedential value. This court is bound to adhere to the majority opinion, including the proposition that a guardian can, in fact, ratify a contract entered into by a ward. Furthermore, in *Toland*, the Tenth District explained,

> *In re Allen* arguably represents a departure from *Fiorini,* [23 Ohio N.P. 303, 1921 Ohio Misc. LEXIS 18, *aff'd*, 108 Ohio St.115, 140 N.E. 324,] since "void" obligations cannot be ratified. However, *In re Allen* did not discuss or cite *Fiorini*, or cases relying on it, much less overrule it. Given then, the broad language of the syllabus relative to a ward binding the guardianship estate, *In re Allen* appears not to have modified the law announced in *Fiorini* and the cases following it.
>
> Nonetheless, the syllabus raises the issue of ratification, indicating that *a ward can bind the guardianship estate if the guardian ratifies the contract*.

(Emphasis added.)   *Toland,* 71 Ohio App.3d at 580, 594 N.E.2d 1103.

{¶31} Finally, we find no merit to appellants' dicta argument.   In *In re Guardianship of Poulous*, 8th Dist. Cuyahoga No. 96366, 2011-Ohio-6472, this court recognized the exception set forth in *In re Allen* that a ward can contractually bind his or her guardianship if the ward's contract is ratified by the guardian.   *Poulous* at ¶ 31, citing *In re Allen* and *Sovak*, 155 Ohio App.3d 479, 2003-Ohio-6717, 801 N.E.2d 896.

{¶32} For all of the foregoing reasons, we find that Jane consented to/ratified the arbitration agreement that John signed on July 1, 2017.   Accordingly, the trial court properly determined that Jane consented to/ratified the updated arbitration agreement that John signed on July 1, 2017, and as a result, granted CSC's motion to stay proceedings and compel arbitration.

{¶33} Judgment affirmed.

It is ordered that appellees recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

EILEEN T. GALLAGHER, P.J., and
RAYMOND C. HEADEN, J., CONCUR