[Cite as *In re Estate of Boone*, 190 Ohio App.3d 799, 2010-Ohio-6269.]


STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN RE ESTATE OF BOONE. | ) | |
| | ) | |
| | ) | |
| | ) | CASE NO. 09-MA-182 |
| | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |
| | ) | |


CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common Pleas.
Probate Division of Mahoning County, Ohio
Case No. 2008ES00571

JUDGMENT:                                        Affirmed


APPEARANCES:

Patrick C. Fire, for appellee, Dawn Carbone.

Geiger, Teeple, Smith & Hahn, Thomas P. Moushey, and Brent A. Barnes, for appellant,
the estate of Carl Boone.


JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro



                                                              Dated: December 15, 2010

DONOFRIO, Judge.

{¶ 1} Appellant, the estate of Carl Boone, appeals from a Mahoning County Probate Court judgment determining that death benefits of several insurance policies were to be distributed to appellee, Dawn Carbone.

{¶ 2} Carl Boone and appellee were engaged and lived together for ten years prior to the events that began on January 18, 2008. On that date, Carl went to the Alliance Community Hospital complaining of abdominal pain. An emergency appendectomy was performed. Although the surgery was successful, a series of post-operative complications arose, the result being that Carl suffered severe brain damage. Carl remained in a vegetative state in a nursing home until his death on October 17, 2008. Carl died intestate, leaving his mother, Mary Boone, as his only heir.

{¶ 3} While Carl was still alive, on February 14, 2008, Mary filed an application to appoint a guardian of the person and the estate for Carl based on Carl's incompetency. Appellee also filed an application to be appointed Carl's guardian. On April 15, the probate court appointed Mary as the guardian of the person and the estate of Carl.

{¶ 4} Prior to January 18, 2008, Carl was employed by Reliable Ready Mix. As Reliable Ready Mix's employee, Carl had term-life and accident insurance policies through American Family Life Insurance Company ("AFLAC"). Reliable

Ready Mix paid the premiums on these policies through June 30, 2008. Appellee was the named beneficiary of the policies.

{¶ 5} On August 5, 2008, the guardian filed two applications. The first application asked (1) to pay the July, August, and future premiums of the life insurance policy and (2) to change the beneficiary from appellee to the estate of Carl Boone, "so that the ward may derive some benefit from the policy death benefit." The second application made the same requests as to the accident insurance policy. The probate court approved both applications. The guardian subsequently paid the insurance premiums and changed the beneficiaries of the policies.

{¶ 6} After Carl's death, on October 31, 2008, the probate court ordered that the guardianship be terminated and that Mary be relieved of her duties as guardian upon the approval of a guardian's account.

{¶ 7} Mary filed a final account of the guardian. The probate court approved the account on January 20, 2009, and discharged the guardian. Appellee filed a motion to stay this judgment, which the probate court denied.

{¶ 8} Proceeding simultaneously with the termination of the guardianship, Mary filed an application for authority to administer Carl's estate. The court appointed Mary as administratrix of Carl's estate. Appellant subsequently collected the insurance proceeds from the policies totaling approximately $140,000.

{¶ 9} Appellee filed a motion to surrender funds requesting that the insurance proceeds be turned over to her because she had been the named

beneficiary of the policies before the guardian changed the beneficiary. Appellant filed a motion to dismiss and memorandum in opposition, asserting that the court lacked subject-matter jurisdiction, appellee did not have standing, and appellee had failed to present any evidence to establish that the court exceeded its authority in issuing the authorization to change the beneficiary.

{¶ 10} The motions were heard before a magistrate, who recommended the following holdings: (1) the probate court had subject-matter jurisdiction, (2) appellee had standing because she was the one who suffered damages as a result of the court's authorization, and (3) the guardian acted reasonably and the court was empowered by statute to allow the guardian to act in changing the insurance beneficiaries. Thus, the magistrate recommended that appellee's motion to surrender funds be denied. Both parties filed objections to the magistrate's decision.

{¶ 11} On October 5, 2009, the probate court rejected the magistrate's decision and ordered that the death benefits of the insurance policies be distributed to appellee. The court determined that it had erred in approving the application for authority to change the beneficiary of the insurance policies because doing so created no benefit to the ward during his lifetime, but instead created only post-mortem benefits for the ward's estate. It went on to reason that guardians do not have the authority to change the names of beneficiaries when such a change does not relate to managing or preserving the ward's estate and when it is not in the best interest of the ward.

{¶ 12}     Appellant filed a timely notice of appeal on October 30, 2009.

{¶ 13}     Appellant raises five assignments of error, the first of which states:

{¶ 14}     "The probate court erred when it denied plaintiff-appellant's motion to dismiss and held that movant-appellee Carbone, as a former potential beneficiary of the life insurance policy and accident policy had standing to challenge the probate court's order authorizing the guardian to change the beneficiary designation on the insurance policies."

{¶ 15}     Appellant argues that appellee, as the former beneficiary of the insurance policies, lacked standing to pursue her motion to surrender funds.

{¶ 16}     "Standing" means that the plaintiff has a personal stake in the outcome of the controversy, a concrete injury that will be resolved by the court, rather than a hypothetical or conjectural matter. *In re Estate of Goehring*, 7th Dist. Nos. 05-CO-27, 05-CO-35, 2007-Ohio-1133, ¶ 69. "The question of standing is whether a litigant is entitled to have a court determine the merits of the issues presented." *Ohio Contrs. Assn. v. Bicking* (1994), 71 Ohio St.3d 318, 320.

{¶ 17}     Whether the established facts confer standing on the plaintiff to assert a claim is a matter of law. *Portage Cty. Bd. of Commrs. v. Akron,* 109 Ohio St.3d 106, 2006-Ohio-954, at ¶ 90. Appellate courts review questions of law under a de novo standard of review. *Skirvin v. Kidd,* 174 Ohio App.3d 273, 2007-Ohio-7179, at ¶ 14.

{¶ 18}     Appellant asserts that appellee did not have a legally enforceable interest, because her interest was not vested at the time the probate court issued

the authorization orders allowing the guardian to change the beneficiary. It contends that because Carl retained the right to change the beneficiary of his policies, appellee did not have a vested interest. And because she did not have a vested interest, appellant points out that appellee would not have had a right to sue the insurer under the policies. Appellant further argues that the guardian had all the rights of ownership of the policies as Carl had, including the right to change the beneficiary.

{¶ 19} Appellant analogizes this case to that of *Ferguson v. Walsh*, 10th Dist. No. 02AP-1231, 2003-Ohio-4504. In *Ferguson*, Vera Peebles deposited two payable-on-death ("POD") certificates into the bank that designated the appellant's minor children as the beneficiaries. A year later, a guardian of the person and estate was appointed for Peebles. The guardian subsequently liquidated the two certificates and used the money to pay for Peebles's care. When Peebles died, the appellant filed claims against Peebles's estate, arguing that the guardian had wrongfully liquidated the POD certificates, and against the bank, for failing to ascertain the status of the certificates. The trial court granted summary judgment in favor of the estate and the bank and dismissed the appellant's claims.

{¶ 20} On appeal, the appellant argued that although the POD certificates were liquidated before Peebles's death, enforceable rights remained with her as a third-party beneficiary because the certificates were wrongly liquidated. The appellate court disagreed. Citing R.C. 2131.10, which deals in part with POD accounts, the court noted that the owner of any such account retains the right to

withdraw the funds as though no beneficiary had been designated. Id. at ¶ 15. The court explained:

{¶ 21} "It follows that the depositor-owner of funds in a P.O.D. account exercises full ownership over the funds during his or her lifetime and the interest of the beneficiary will not vest until the depositor-owner's death. The proceeds of a P.O.D. account are revocable at will during the lifetime of the depositor-owner. The interest retained by the depositor-owner is both legal and equitable. A court appointed guardian 'acting as a fiduciary, exercise[s] all rights of ownership which the ward could have exercised during her lifetime had she not been declared legally incompetent.' This power includes the rights to withdraw funds from a P.O.D. account and thereby delete the beneficiary if it is in the best interest of the ward. Indeed, the guardian of a person and an estate has a duty to provide for maintenance for the ward, as paid out of the ward's estate, which includes health care, debts and other affairs relating to the management of the estate. R.C. 2111.13 and 2111.14. Therefore, during the lifetime of the ward-owner, a guardian acts in the best interest of the ward when the withdrawal of proceeds from a P.O.D. certificate is related to the management of the ward's estate or maintenance of the ward." (Citations omitted.) Id. at ¶ 18.

{¶ 22} Thus, the court concluded that the appellant had no standing to challenge the liquidation of the POD account.

{¶ 23} The appellant had also argued that her rights could not be eliminated if the POD certificate was wrongfully liquidated. The court found no

merit in this argument for two reasons. First, it reasoned that the appellant had failed to cite any facts or law that showed that liquidation to provide for Peebles's care was not in her best interest. Id. at ¶ 21. Second, it reasoned that the appellant had failed to set forth facts evidencing Peebles's purported intent to create an irrevocable testamentary instrument in favor of the former beneficiaries, as the appellant alleged. Id.

**{¶ 24}** Appellee, on the other hand, relies on *J.G. Wentworth L.L.C. v. Christian*, 7th Dist. No. 07-MA-113, 2008-Ohio-3089. *Christian* dealt with the assignment of annuity payments and, in part, whether the intended third-party beneficiaries had standing to bring a claim. This court concluded:

**{¶ 25}** "Contrary to J.G. Wentworth's suggestions, an intended third party beneficiary of a contract can bring an action on that contract. See, e.g., *Grant Thornton v. Windsor House, Inc.* (1991), 57 Ohio St.3d 158, 161. Likewise, a beneficiary named on a non-probate asset is such an intended third party beneficiary of the contract governing that asset and thus has the concomitant power and standing to assert rights under the contract governing that asset. See *Visintine & Co. v. New York & St. L.R. Co.* (1959), 169 Ohio St. 505, 507 (noting that life insurance beneficiary has right to enforce contract as third party intended donee beneficiary). See, also, *Taylor v. First Natl. Bank of Cincinnati* (1986), 31 Ohio App.3d 49, 51 (beneficiary on decedent's payable on death savings account has standing to argue rights under deposit contract). Accordingly, we conclude that

appellants have standing to raise defenses and arguments to support their claimed right to the annuity payments." Id. at ¶ 34.

{¶ 26} Appellee's reliance on *Christian*, 2008-Ohio-3089, is well placed. The facts bear many similarities to the case at bar. Additionally, *Christian* is the precedent for this court. And *Christian* relied in part on an Ohio Supreme Court case that specifically stated that an intended third-party beneficiary of a contract can bring an action on that contract. See *Grant Thornton*, 57 Ohio St.3d at 161.

{¶ 27} On the other hand, *Ferguson*, 2003-Ohio-4504, is not precedent for this court. Moreover, *Ferguson* is distinguishable from this case. In *Ferguson*, the parties were dealing with POD certificates. The guardian liquidated the certificates during Peebles's lifetime. The guardian then used the money to pay for Peebles's care. Thus, the money was made available to Peebles during her lifetime and for her direct care. In this case, however, changing the beneficiary of the insurance policies provided no benefit to Carl during his lifetime. The money was not made available for his care, because it could not be collected until his death.

{¶ 28} Based on the above, the trial court did not err in finding that appellee had standing to bring her motion to surrender funds. Accordingly, appellant's first assignment of error is without merit.

{¶ 29} Appellant's second assignment of error states:

{¶ 30} "The probate court erred in failing to dismiss Dawn Carbone's motion to surrender for lack of jurisdiction."

**{¶ 31}** Here, appellant first argues that the probate court did not have authority to modify the authorization orders in the guardianship case. It notes that 14 months had passed since the court issued the authorization orders, and ten months had passed since the guardianship had terminated. Appellant argues that what appellee actually sought was to have the court vacate its authorization orders. It contends that the only way to vacate such an order is to follow the procedure of a Civ.R. 60(B) motion for relief from judgment. It points out that appellee did not file such a motion.

**{¶ 32}** Second, appellant argues that the probate court was divested of its authority to modify its prior order once the guardianship case was terminated. It contends that once Carl died, the court's only jurisdiction in the guardianship case was to settle the guardian's final accounting, which it did on January 20, 2009. And once the court terminated the guardianship, appellant argues, the guardianship ceased to exist, and the court was divested of subject-matter jurisdiction to go back into the guardianship for any reason.

**{¶ 33}** Finally, appellant claims that there was no legal basis for appellee's motion to surrender funds. It notes that probate courts are courts of limited jurisdiction and may hear only those types of cases expressly authorized by statute.

**{¶ 34}** "The existence of the court's own subject-matter jurisdiction in a particular case poses a question of law which the court has the authority and responsibility to determine." *Internatl. Lottery, Inc. v. Kerouac* (1995), 102 Ohio App.3d 660, 670. As this issue presents a question of law, we review it de novo.

**{¶ 35}** Appellant is correct that generally the legal effect of a guardianship ends upon the death of the ward, and the executor of the estate takes immediate title to the assets. *State ex rel. Hards v. Klammer*, 11th Dist. No. 2004-L-189, 2005-Ohio-2655, at ¶14, citing *Simpson v. Holmes* (1922), 106 Ohio St. 437. Nonetheless, even though the legal effect of the guardian has terminated, both the guardian and the court still retain some residual authority over the estate assets. Id. at ¶ 14-18, citing *State ex rel. Beedle v. Kiracofe* (1964), 176 Ohio St. 149, and *In re Schueneman* (1948), 78 N.E.2d 688. This authority is usually limited to wrapping up the guardianship and settling the final accounting.

**{¶ 36}** The probate court has exclusive jurisdiction "[t]o direct and control the conduct and settle the accounts of executors and administrators and order the distribution of estates." R.C. 2101.24(A)(1)(c). The probate court is vested with full power to determine what property is lawfully included in an inventory as assets. *In re Estate of Taylor* (June 21, 1991), 4th Dist. No. 1957, citing *Bolles v. Toledo Trust Co.* (1940), 136 Ohio St. 517.

**{¶ 37}** "Whenever a probate court has a case before it, it also 'has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code.'" *Estate of Snell v. Kilburn*, 165 Ohio App.3d 352, 2005-Ohio-7076, at ¶ 41, quoting R.C. 2101.24(C). The legislative grant of plenary power to the probate court gives the court authority to take actions necessary to fully dispose of any matter properly before the court. Id., citing *Roll v. Edwards*, 156 Ohio App.3d

227, 2004-Ohio-767, at ¶ 20. This plenary power, however, is limited to matters "properly before the court." *State ex rel. Marsteller v. Maloney*, 7th Dist. No. 04-MA-279, 2005-Ohio-1836, at ¶ 37, quoting *State ex rel. Goldberg v. Mahoning Cty. Probate Court* (2001), 93 Ohio St.3d 160, 165.

**{¶ 38}** "The Probate Court has constitutional jurisdiction of probate and testamentary matters and the accounts of executors and administrators. Such constitutional jurisdiction necessarily comprehends jurisdiction of inventories of administrators and executors and exceptions thereto, as inventories are essential to the accounting of executors and administrators. Incident to the constitutional jurisdiction in the premises, the Probate Court has plenary power to dispose of any matter properly before it, including the power to adopt and apply remedies which are legal or equitable in their nature. The exercise of such jurisdiction by the Probate Court is mandatory and not discretionary." *In re Thrush's Estate* (1945), 76 Ohio App. 411, 423.

**{¶ 39}** Pursuant to the court's plenary power and its jurisdiction over the inventories of estates, the probate court in this case had subject-matter jurisdiction over the insurance proceeds. The insurance proceeds were included as an asset of the estate. Therefore, the court had jurisdiction to determine whether the proceeds properly belonged to the estate. Accordingly, appellant's second assignment of error is without merit.

**{¶ 40}** Appellant's third assignment of error states:

{¶ 41} "The probate court erred in failing to adopt the magistrate's findings of fact when the movant-appellee failed to file a transcript of the hearing with her objections in accordance with Civ.R. 53(D)(3)(b)."

{¶ 42} Appellant argues here that the probate court erred in rejecting the magistrate's decision "in whole" without the benefit of an evidentiary transcript of the proceedings before the magistrate. It points out that all objections to findings of fact must be supported by a transcript of the evidence. Civ.R. 53(D)(3)(b)(iii). Because appellee failed to file a transcript, appellant argues, the court abused its discretion in failing to adopt the magistrate's findings of fact. Further, appellant asserts that because the court rejected the magistrate's decision in whole, it was left with no factual basis on which it could have determined what was in Carl's best interest.

{¶ 43} Civ.R. 53(D)(3)(b)(iii) provides:

{¶ 44} "An objection *to a factual finding*, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." (Emphasis added.)

{¶ 45} In this case, however, appellee did not object to any of the magistrate's findings of fact. Instead, she objected to the magistrate's conclusion of law, stating, "The Movant, respectfully submits that the Magistrate made an error of law when he concluded that this court was empowered to allow the Guardian to act in the changing of the life insurance beneficiaries for the subject policies of

insurance." She continued to make various legal arguments against this allegedly erroneous conclusion of law.

**{¶ 46}** While a party cannot challenge a magistrate's factual findings on appeal unless the party submits a proper transcript or affidavit, the party can challenge conclusions of law without a transcript. *Dinu v. Dinu*, 8th Dist. No. 89216, 2008-Ohio-223, at ¶ 9. Only when the resolution of the objections necessitates a factual, evidentiary analysis is a transcript required. Id. In cases where the objecting party fails to provide a transcript or affidavit, the trial court is limited to examining the magistrate's conclusions of law and recommendations in light of the findings of fact unless the trial court elects to hold further hearings. *Boswell v. Wheeling Canvas Prods.*, 7th Dist. No. 06-JE-10, 2006-Ohio-7051, at ¶ 13.

**{¶ 47}** Because appellee did not challenge the magistrate's findings of fact, but instead challenged only the conclusions of law, she was not required to file a transcript.

**{¶ 48}** Furthermore, appellant conceded this point in the trial court. In the court's judgment entry, it noted: "Both counsel indicated that there was no objection to the factual findings of the Magistrate and therefore a transcript as referred to in Rule 53(D)(3)(b)(iii) of the Ohio Rules of Civil Procedure was not required."

**{¶ 49}** As an aside, we should note that appellant filed a transcript with this court after filing its notice of appeal. But because the transcript was not before the trial court, this court will not consider it.

{¶ 50} Accordingly, appellant's third assignment of error is without merit.

{¶ 51} Appellant's fourth assignment of error states:

{¶ 52} "The probate court erred in rejecting the magistrate's decision of June 12, 2009, when it incorrectly interpreted the 'best interest of the ward' test under R.C. 2111.50."

{¶ 53} Appellant contends that the probate court did not properly interpret the "best interest of the ward" test as set out in R.C. 2111.50.

{¶ 54} R.C. 2111.50(C) provides that "all powers of a guardian that relate to his ward or guardianship * * * shall be exercised in the best interest, as determined in the court's or guardian's judgment, of the following:

{¶ 55} "(1) The person whom the probate court has found to be an incompetent or a minor subject to guardianship;

{¶ 56} "(2) The dependents of the person;

{¶ 57} "(3) The members of the household of the person."

{¶ 58} Appellant argues that the probate court improperly added the requirement to this section that the best interest of the ward must be "during the ward's lifetime." It analogizes this case to *Estate of Strang v. Strang*, 5th Dist. No. 03-COA-071, 2004-Ohio-3677. The portions of the *Strang* decision on which appellant relies, however, were findings of the trial court, which the appellate court in that case did not make.

{¶ 59} In *Strang*, the decedent had opened a certificate of deposit payable on death to the appellant. Two years later, a guardian was appointed for the

decedent. The guardian deleted the POD clause. The funds of the certificate were not needed by the decedent during his lifetime and remained at the time of his death. The appellant was initially appointed as administrator of the estate (however, he was later removed for financial misconduct). In his final account, the certificate of deposit was listed as an estate asset. The appellant filed a motion to delete the certificate of deposit from the account. The court, treating the motion as a declaratory-judgment action, found the certificate of deposit to be an estate asset.

{¶ 60} The appellate court simply found the Ohio Supreme Court's holding in *Miller v. Peoples Fed. S. & L. Assn.* (1981), 68 Ohio St.2d 175, to be controlling. Id. at ¶ 18-19. In *Miller*, the court held:

{¶ 61} "The depositor of a payable-on-death (P.O.D.) account retains her rights to ownership and full control of such account during her lifetime. Following a finding of incompetency by the Probate Court, the depositor's ownership rights pass to the legally appointed guardian of her estate, including the right to designate a change in the registration of such account." *Miller*, 68 Ohio St.2d 175, at paragraph one of the syllabus.

{¶ 62} Finally, appellant argues that the benefit conferred on Carl was post-mortem, as the proceeds of the insurance policy would be available to pay necessary bills and expenses.

{¶ 63} When determining whether a trial court correctly interpreted and applied a statute, an appellate court uses a de novo standard of review. *Akron v. Frazier* (2001), 142 Ohio App.3d 718, 721.

**{¶ 64}** A guardian's duty is to manage and preserve the ward's estate, to provide for the care and protection of the ward's person, and to act in the best interest of the ward. *Witt v. Ward* (1989), 60 Ohio App.3d 21, citing R.C. 2111.13 and 2111.14. "A guardian is not the 'alter ego' of the ward and cannot perform all acts for the ward in the same manner as the ward would do, except for the adjudication of incompetence." Id. The probate court does not have the power to authorize a guardian to enter into contracts other than those made in the management of the ward's estate and protection of his person. Id., citing *Zuber v. Zuber* (1952), 93 Ohio App. 195.

**{¶ 65}** "Appellants, as guardians, have no authority to enter into a transaction which does not involve the management of the estate. Further, they have no authority to prohibit or interfere with a testamentary disposition of the ward's. This is particularly true in light of the fact that their changing of the account designation has not been shown to be in the best interest of the ward." Id. at 24.

**{¶ 66}** Based on the above case law, the trial court did not err in determining that it should not have allowed appellant to change the beneficiaries on the insurance policies.

**{¶ 67}** On her application for authority to change beneficiary, the guardian stated that the reason for seeking to change the beneficiary was "so that the ward may derive some benefit from the policy death benefit." This was the only reason she gave. It is certain that Carl would not receive any benefit from his own death benefits. The only person who stood to benefit from changing the beneficiary from

appellee to Carl's estate was Carl's next-of-kin, in this case, his mother. Thus, changing the beneficiary was not in Carl's best interest.

**{¶ 68}** Furthermore, by changing the insurance beneficiary, the guardian was clearly interfering with Carl's testamentary intention. Carl did not have a will. His only testamentary intention was expressed through his designation of his life-insurance beneficiary. He chose to designate appellee as his beneficiary.

**{¶ 69}** Finally, changing the beneficiary on the insurance policies provided no benefit to Carl as to his care or protection. Many of the cases cited by appellant deal with bank accounts where changing the beneficiary resulted in freeing up money that could then be used to care for the ward during his/her lifetime. Such was not the case here. No money was available under the policies until after Carl's death.

**{¶ 70}** For these reasons, appellant's fourth assignment of error is without merit.

**{¶ 71}** Appellant's fifth assignment of error states:

**{¶ 72}** "The probate court erred in granting Carbone's motion to surrender and awarding the insurance proceeds to a third party in the estate proceeding."

**{¶ 73}** Here appellant argues that the probate court erred in finding that a guardian could not change the beneficiary designation on insurance policies that provide postmortem benefits, because it was not in the best interest of the ward during the ward's lifetime. It reasons that assuming arguendo that the court was correct in holding that the beneficiary change was not in the ward's best interest,

the court should have also reversed its order approving the payment of the insurance premiums by the guardian. Appellant also argues that the insurance policies could have provided a lifetime benefit to the ward by way of converting the policies into cash through a viatical settlement. Finally, appellant argues that appellee's only way to proceed here was through a declaratory-judgment action, which appellee did not file.

{¶ 74} First, the court's order approving payment of the insurance premiums by the guardian was separate from its order allowing the beneficiary change. Even though the court ultimately reversed its order allowing the beneficiary change, it was not under any duty to change the order approving payment of the insurance premiums. The court could have considered these payments necessary in order to preserve Carl's testamentary intentions and to keep this asset of his intact should he somehow have recovered from his coma.

{¶ 75} Second, appellant's mention of turning the life-insurance policies into a viatical settlement appears for the first time here on appeal. Because appellant did not raise this issue in the trial court, we will not address it. Furthermore, there was no indication whatsoever that the policies had any cash surrender value or that appellant attempted to enter into some type of settlement with the insurance company.

{¶ 76} Third, appellant is correct that appellee did not file a declaratory-judgment action. However, she provides no support for her proposition that this was the only avenue appellee had to pursue her claim.

**{¶ 77}** Accordingly, appellant's fifth assignment of error is without merit.

**{¶ 78}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Judgment affirmed.

WAITE and DEGENARO, JJ., concur.