[Cite as *In re Estate of Harries*, 2018-Ohio-3725.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

## IN THE MATTER OF THE ESTATE OF

## WILLIAM GEORGE HARRIES, II, DECEASED

---

### OPINION AND JUDGMENT ENTRY
### Case No. 17 BE 0053

---

Probate Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case Nos. 08 ES 130 & 08 CV 130

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Kathleen Bartlett, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Terry Schultz, Jr.*, Harper Law Office, 109 East Church Street, Barnesville, Ohio 43713, for Appellants John A. Harris and Jeri Sanders Mesler, and *Atty. Keith Sommer*, Sommer Law Office, 409 Walnut Street, P.O. Box 279, Martins Ferry, Ohio 43935, for Appellant, Administrator of Estate of William G. Harries, II, and

*Atty. Michael Shaheen,* Shaheen Law Group, 128 South Marietta Street, St. Clairsville, Ohio 43950 and *Atty. Steven Verba,* Verba Law Office, 180 Millrose Drive, St. Clairsville, Ohio 43950, for Appellee, Mary Jane Roberts.

Dated:
September 13, 2018

**Donofrio, J.**

{¶1}    Appellants, Keith Sommer as Administrator of the Estate of William G. Harries II, John Harris, and Jeri Sanders Mesler, appeal from a Belmont County Probate Court judgment determining that the proceeds from an annuity are to be paid to appellee, Mary Jane Roberts as the Executrix of the Estate of Margaret Roberts.

{¶2}    William Harris, Sr. was married to Emily Harris.  They had two children together:  William Harries II and appellant John Harris.[1]  Emily also had a daughter, appellant Jeri Sanders Mesler.

{¶3}    On January 30, 1992, William Sr. completed an annuity application, designating Emily as his primary beneficiary and William II as the only contingent beneficiary of his annuity.  The annuity was assigned to Genworth Financial (Genworth). William Sr. and Emily subsequently divorced. William Sr. then executed a change in beneficiary form designating Emily as the primary beneficiary "until she dies."  He designated William II as the first contingent beneficiary and stated William II "will get 100% of annuity remaining after she [Emily] dies."  William Sr. designated his cousin, Margaret Roberts Van Kirk, as the second contingent beneficiary "if anything remains."

{¶4}    William Sr. died on April 17, 2002.  Emily received the annuity payments until her death on November 26, 2006.  William II then received the annuity payments until his death on February 12, 2008.

{¶5}    William II left two holographic wills, both mentioning Margaret and her sister appellee Mary Jane Roberts.  The probate court declared the holographic wills void.   Appellants John and Jeri, along with Margaret and appellee Mary Jane, subsequently agreed to share equally in the balance of William II's estate.

{¶6}    After William II's death, Margaret received the annuity payments until her death on November 23, 2016.  At the time of Margaret's death, the annuity had a remaining value of $77,946.90.  Mary Jane was appointed the executrix of Margaret's estate.

---

1 William "Harris" II had his name legally changed to William "Harries" II.

**{¶7}** On May 23, 2017, the probate court reopened William II's estate on Attorney Sommer's motion. Attorney Sommer indicated that William II was the beneficiary of the annuity and it was necessary to reopen the estate to liquidate that asset.

**{¶8}** On June 13, 2017, pursuant to the change in beneficiary form, Genworth issued a check for $77,946.90 to William II's estate.

**{¶9}** Next, Attorney Sommer filed a motion to distribute funds. In the motion, he asked the court to rule on who was entitled to the $77,946.90 balance of the annuity. The probate court held a hearing on the motion where it heard from appellants and appellee. The court found that the balance of the annuity funds was to be paid to Margaret's estate.

**{¶10}** Appellants filed a timely notice of appeal on December 13, 2017. They now raise four assignments of error. We will address appellants' second and fourth assignments of error first since they deal with jurisdiction.

**{¶11}** Appellants' second assignment of error states:

THE PROBATE COURT COMMITTED ERROR IN STATING THE COURT HAS JURISDICTION OVER THIS MATTER. * * * THE COURT DID NOT HAVE JURISDICTION OVER GENWORTH FINANCIAL WHICH WAS NOT A PARTY TO ANY LEGAL PROCEEDINGS INVOLVING THE ANNUITY PROCEEDS.

**{¶12}** Appellants' fourth assignment of error states:

THE PROBATE COURT COMMITTED ERROR IN FAILING TO RULE ON APPELLANT ADMINISTRATOR'S MOTION TO DISTRIBUTE FUNDS SET FORTH IN THE SCHEDULE OF ASSETS IN THE ESTATE OF WILLIAM G. HARRIES II, WHICH MOTION REQUESTED AUTHORIZATION WHETHER THE ANNUITY PROCEEDS SHOULD BE PAID TO THE NEXT OF KIN, JOHN A. HARRIS AND JERI SANDERS MESLER, OR DISTRIBUTE THE FUNDS PURSUANT TO AN AGREEMENT ENTERED INTO BY JOHN A. HARRIS AND JERI SANDERS MESLER, MARGARET E. ROBERTS AND MARY JANE

ROBERTS DURING THE PENDENCY OF THE ESTATE IN 2008. THE COURT ONLY HAS JURISIDICTION TO RULE ON APPELLANT'S MOTION AND NOT TO REVERSE PAYMENTS OF THE ANNUITY PROCEEDS BY GENWORTH FINANCIAL TO THE ESTATE OF WILLIAM G. HARRIES II.

{¶13} Here appellants contend the probate court did not have jurisdiction over Genworth to reverse its payment of the annuity proceeds to the Estate of William Harries II. They point out that appellee never filed a complaint in the Belmont County Common Pleas Court naming Genworth and the Estate of William Harries II as defendants to assert that appellee was entitled to the annuity proceeds. Appellants assert Genworth was a necessary party for the court to have jurisdiction to determine who was entitled to the annuity proceeds. They claim that if the annuity proceeds were a non-probate asset, the probate court did not have jurisdiction since Genworth was not named as a party.

{¶14} Subject-matter jurisdiction in a particular case is a question of law, which the court has the authority and responsibility to determine. *In re Estate of Boone*, 7th Dist. No. 09-MA-182, 2010-Ohio-6269, ¶ 34, quoting *Internatl. Lottery, Inc. v. Kerouac*, 102 Ohio App.3d 660, 670, 657 N.E.2d 820 (1995). Therefore, since it is a question of law, this court reviews the question de novo. *In re Estate of Boone*, 7th Dist. No. 09-MA-182 at ¶ 34.

{¶15} R.C. 2101.24(A)(1)(c) provides that the probate court has exclusive jurisdiction "[t]o direct and control the conduct and settle the accounts of executors and administrators and order the distribution of estates." The probate court also has constitutional jurisdiction over the accounts of executors and administrators. *In re Estate of Boone*, 7th Dist. No. 09-MA-182 at ¶ 38, quoting *In re Thrush's Estate*, 76 Ohio App. 411, 423, 64 N.E.2d 839 (1945).

{¶16} Moreover, R.C. 2101.24(B)(1)(c)(i) provides that the probate court has concurrent jurisdiction with the general division of the common pleas court to hear and determine actions regarding a probate estate, guardianship, trust, or post-death dispute that involves "[a] designation or removal of a beneficiary of a life insurance policy,

annuity contract, retirement plan, brokerage account, security account, bank account, real property, or tangible personal property."

{¶17} Appellants attempt to characterize the probate court's action as compelling Genworth to switch the annuity payment from the estate of William G. Harries II to the estate of Margaret Van Kirk. Their argument that Genworth is a necessary party hinges on their belief that Genworth maintains an interest in the funds from the annuity. But the record demonstrates that Genworth's interest in the annuity had already ended when the probate court issued its order. In fact, Attorney Sommer has the lump sum of the remainder of the annuity in his trust account. (Tr. 12).

{¶18} Regardless, R.C. 2101.24(A)(1)(c) unambiguously grants the authority to the probate court to settle the accounts of administrators and order the distribution of the estates. This is the situation at bar, as the probate court ordered the distribution of the annuity. The probate court exercised authority over appellants themselves, not Genworth, seeing as Attorney Sommer was in possession of the annuity.

{¶19} Accordingly, appellants' second and fourth assignments of error are without merit and are overruled.

{¶20} Appellants' first and third assignments of error deal with the probate court's judgment that the annuity proceeds should go to the estate of Margaret Van Kirk. Therefore, we will address them together.

{¶21} Appellants' first assignment of error states:

THE PROBATE COURT COMMITTED ERROR IN ORDERING THE ANNUITY PROCEEDS WHICH WERE A PROBATE ASSET IN THE ESTATE OF WILLIAM G. HARRIES II TO BE PAID TO THE ESTATE OF MARGARET E. ROBERTS.

{¶22} Appellants' third assignment of error states:

THE PROBATE COURT COMMITTED ERROR ORDERING THE ANNUITY PROCEEDS BE PAID TO THE ESTATE OF MARGARET E. ROBERTS AND FAILED TO CONSIDER THE LANGUAGE OF THE BENEFICIARY CHANGE FORM STATING "UNLESS OTHERWISE NOTED" WHICH APPLIES TO WILLIAM GEORGE HARRIES II "WILL

GET 100% OF ANNUITY REMAINING AFTER SHE DIES" WHICH REFERS TO HIS MOTHER, THE FIRST NAMED BENEFICIARY.

**{¶23}** In these assignments of error, appellants argue that the funds from the annuity should go to William Harries II's estate, not Margaret's estate. Appellants base this argument on a schedule of assets that was filed in 2017, which divided up the probate assets from William Harries II's estate equally among appellants, Margaret, and Mary Jane. Appellants further argue that the change in beneficiary form clearly states that William Harries II is entitled to 100% of the annuity.

**{¶24}** Appellants argue that because the beneficiary change form stated that William Harries II "will get 100% of annuity remaining after she dies", his estate is entitled to the entirety of the annuity. They believe that as soon as his mother passed, he became the owner of the annuity. Therefore, according to appellants Margaret, as the second contingent beneficiary, was only entitled to receive payments from the annuity until her death. They contend that at Margaret's death, the remainder of the annuity transferred back to William Harries II's estate, and therefore should be distributed according to the schedule of assets agreement.

**{¶25}** An annuity is purely contractual in nature. *J.G. Wentworth L.L.C. v. Christian*, 7th Dist. No. 07-MA-113, 2008-Ohio-3089, ¶ 29. The court's role in reviewing a contract is to determine the parties' intent and give effect to it. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St. 3d 270, 273, 714 N.E.2d 898 (1999). "A contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract." *Cadle v. D'Amico*, 7th Dist. No. 15-MA-0136, 2016-Ohio-4747, ¶ 22, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). A contract is ambiguous if its language is "unclear, indefinite, and reasonably subject to dual interpretations or is of such doubtful meaning that reasonable minds could disagree as to its meaning." *Id.* at ¶ 24, quoting *Beverly v. Parilla*, 165 Ohio App.3d 802, 808, 2006-Ohio-1286, 848 N.E.2d 881, ¶ 24 (7th Dist.).

**{¶26}** The phrase "will get 100% of annuity remaining after she dies" does not work in conjunction with, "if anything remains," which William Sr. wrote next to Margaret's name. If William Harries II was to get 100% of the annuity after Emily Harris

Case No. 17 BE 0053

passed, then there are no possible situations in which anything would remain to pass on to Margaret. Reading this wording as appellants urge us to would render Margaret's contingency meaningless.

**{¶27}** Appellants argue that the phrasing "unless otherwise noted" referred to the handwriting on the form which granted William Harries II "100% of annuity remaining." But there is no evidence that these phrases modify each other.

**{¶28}** Moreover, even if we found an ambiguity in the written notes on the change in beneficiary form, the intent of William Sr. precludes an interpretation giving the annuity to the estate of William Harries II.

**{¶29}** If an ambiguity exists, the court must look to the intent of the parties in determining interpretation. *D'Amico*, 7th Dist. No. 15-MA-0136 at ¶ 24. Extrinsic evidence exists here in the form of a will and the original annuity form.

**{¶30}** On January 30, 1992, William Sr. completed the original annuity application. The document listed Emily as the primary beneficiary and William Harries II as the contingent beneficiary. In 1998, William Sr. wrote a will. In the will, it specifically stated:

> I intend to disinherit my son, John Alfred Harris, of Jonesboro, Louisiana. In the event my son William G. Harris, II, predeceases me, I give, devise, and bequeath all the rest, residue and remainder of my estate to my cousins, Mary Jane Roberts, of Atlanta Georgia, and Margaret E. Roberts Van Kirk, of North Gahanna, Ohio. In the event of the death of one of my cousins, the share of my deceased cousin would pass and descend to the surviving cousin.

**{¶31}** (Ex. D). This will indicated that William Sr. desired to completely disinherit his son John, and set up his estate in a manner to effectuate that purpose. William Sr. went even further however, and two years later changed the beneficiaries of his annuity to include one of the cousins he included in his latest will. And when William Harries II died, William Sr.'s cousin Margaret received the annuity benefits until her death.

**{¶32}** Appellants note that Genworth deposited the sum of the annuity into the account of William Harries II after Margaret's death. They state that Genworth

depositing the sum in Harries' account "speaks for itself." But the fact that an annuitant does not demand payment does not affect the right to the annuity. *Cairnes v. Knight*, 17 Ohio St. 68, 70-71 (1866).

**{¶33}** In sum, William Sr.'s intent was to cut off the inheritance in his own family line after the passing of William Harries II, and transfer the remaining to his cousins. His intent supports the interpretation of "will get 100% of annuity remaining" to only refer to the benefits of the annuity. Reading the annuity any other way would result in the inheritance continuing down the Harris direct family line, eventually ending up with John Harris. This reading would go against William Sr.'s intent. Therefore, the phrase referencing 100% of the annuity referred only to the benefits, and was put in the document to indicate that William Harries II was not to split the annuity benefits with anyone.

**{¶34}** In conclusion, both the four corners of the contract and the intent of William Sr. demonstrate that the probate court correctly determined that the remaining annuity proceeds are to be paid to appellee.

**{¶35}** Accordingly, appellants' first and third assignments of error are without merit and are overruled.

**{¶36}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs
Bartlett, J., concurs

Case No. 17 BE 0053

[Cite as *In re Estate of Harries*, **2018-Ohio-3725.**]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**