[Cite as *B.T. Environmental Solutions, L.L.C. v. B.T. Energy Group, Inc.*, 2018-Ohio-5113.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

B.T. ENVIRONMENTAL SOLUTIONS, L.L.C.,

Plaintiffs-Appellants,

v.

B.T. ENERGY GROUP, INC., et al.,

Defendants, Counterclaimants, and Third Party Plaintiffs-Appellees,

v.

DAVID TOD, JR.,

Third Party Defendant, Counter-Claimant, and Cross-Claimant-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 CO 0010**

---

Civil Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2013 CV 524

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, Kathleen Bartlett, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Charles E. Dunlap*, 7330 Market Street, Youngstown, Ohio 44512, for Plaintiff-Appellant

*Atty. Dean S. Hoover*, Hoover and Gialluca, LLC, Hudson Station, Suite 3, 5 Atterbury Boulevard, Hudson, Ohio 44236, for Third Party Appellant

*Atty. Michelle M. French* , 28 West Jefferson Street, Jefferson, Ohio 44047, for Defendants-Appellees.

Dated:  December 10, 2018

---

**WAITE, J.**

{¶1}    Appellants Daniel J. and Daniel P. O'Horo appeal a March 22, 2017 Columbiana County Common Pleas judgment entry.  Appellants argue that the trial court erroneously found that they lacked standing to bring a shareholder derivative action as individuals and on behalf of B.T. Environmental Solutions, L.L.C.  Based on this record, Appellants' argument is without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2}    Some time in early 2012, Steven Beight ("Beight") and David Tod, Jr. ("Tod, Jr.") were introduced by a mutual friend.  Apparently, as a result of their discussion of the oil and gas industry, Tod, Jr. and Beight agreed to start a brine water removal company.  In February of 2012, Beight filed paperwork with the Ohio Secretary of State creating B.T. Environmental Solutions, L.L.C.  ("B.T.").  At the time B.T. was created, the parties did not have a written operating agreement.  Beight and Tod, Jr. were the sole members of B.T.

{¶3}    Beight and Tod, Jr. decided to purchase property for the business.  In particular, they were interested in the "Essroc Property," which is located in Pennsylvania.  The property was owned by a company headquartered in Italy.  Beight and Tod, Jr. believed it would cost approximately eight to ten million dollars to acquire the property.

{¶4} On February 22, 2012, Beight opened a checking account for B.T. at Chase Bank and deposited $100 into the account. Two days later, Tod. Jr. deposited $5,000 into the account. On March 2, 2012, Tod Jr.'s father, David Tod, Sr., contributed $50,000 to the L.L.C., which Tod, Jr. deposited into the account.

{¶5} Beight and Tod, Jr. decided to hire one employee and purchase one truck. In the meantime, they retained a law firm for purposes of drafting an operating agreement. The firm did not produce a draft until August of 2012. A final written operating agreement was never produced or signed.

{¶6} In April or May of 2012, Beight and Tod, Jr. met with Appellants Daniel J. and Daniel P. O'Horo. Appellants agreed to contribute $500,000 to B.T. According to testimony from Beight and Tod, Jr., Appellants' role within the company had not yet been determined. Beight testified that he and Tod, Jr. would each retain a fifty percent ownership in B.T. Tod, Jr. testified that he believed that percentages of ownership and certificates of title would be issued once they acquired the Essroc Property.

{¶7} With this $500,000 influx of funds, the B.T. checking account contained approximately $555,100. Tod, Jr. believed the parties would not spend B.T. funds, except for the salaried employee and truck, until they had all of the requisite funds secured in order to purchase the Essroc Property. However, at some point Tod, Jr. learned that Beight had purchased vehicles in his name using B.T. funds and had paid himself a salary. The parties disagreed about Beight's ability to spend the funds, causing the parties' relationship to deteriorate.

{¶8} On August 26, 2013, Appellants filed a complaint, seeking redress on their own behalf as individuals, and on behalf of B.T. The complaint included shareholder

derivative and civil RICO claims. Appellants, allegedly on behalf of B.T., named as defendants Appellees Steven and Lizabeth Kay Beight, Clearwater Shale Services, L.L.C., and Water-N-Hole, L.L.C. The trial court granted Appellees' motion for summary judgment, which essentially sought dismissal of Lizabeth Kay Beight, Clearwater, and Water-N-Hole from the action. Appellants filed an appeal of the trial court's decision to grant Lizabeth Kay Beight's dismissal in *B.T. Environmental Solutions, LLC v. B.T. Energy Group, Inc.,* 7th Dist. No. 14 CO 44, 2015-Ohio-4147. This Court reversed the trial court's decision, holding that a genuine issue of material fact existed as to whether Lizabeth Kay Beight participated in the actions leading to the complaint.

**{¶9}** On December 11, 2013, Steven Beight filed a third-party complaint against David Tod, Jr. The complaint sounded in breach of contract, breach of fiduciary duty, and fraud claims and sought indemnification, among other forms of relief. Tod, Jr. filed counter and cross-claims asserting fraud, conversion, constructive trust, an application for accounting, and seeking a preliminary injunction.

**{¶10}** The case proceeded to a three-day bench trial. The trial court ruled on the original complaint that Appellants lacked standing to file a shareholder derivative action because they were not members of B.T. Regarding the third-party complaint brought by Steven Beight, the trial court found in favor of Tod, Jr. On Tod Jr.'s third-party counter- and cross-claims, the trial court found that he also lacked standing, because he did not raise any claims on behalf of B.T. and did not suffer separate and distinct individual harm.

**{¶11}** This timely appeal concerns only the trial court's decision that Appellants lacked standing to file a shareholders derivative action.

## ASSIGNMENT OF ERROR

THE COURT ERRED IN ITS JUDGMENT ENTRY OF MARCH 22, 2017, WHEN IT FOUND THAT PLAINTIFF-APPELLANTS [SIC] WERE NOT MEMBERS OF THE LIMITED LIABILITY COMPANY.

{¶12} In their brief, Appellants argue that they were members of the L.L.C. based on their monetary contribution. Appellants concede that they were not members of B.T. at the time it was created and did not become shareholders through any written consent or written assignment of an existing member. Instead, they argue that they obtained membership through R.C. 1705.24 which they believe grants membership in an L.L.C. based solely on monetary contributions. At oral argument, Appellants shifted from the statutory argument to a promissory estoppel argument. They essentially argued that they are *de facto* members based on the fact that they provided the largest monetary contribution.

{¶13} In response, Appellees assert that Appellants were not members of B.T. at the time of its formation. Further, as B.T. did not have a written operating agreement at any time Appellants must demonstrate that they became members of the L.L.C. by written consent of the existing members or through the assignment of an existing member's interest. Appellees urge that there is no such evidence in this record.

{¶14} "Whether the established facts confer standing on the plaintiff to assert a claim is a matter of law." *In re Estate of Boone*, 190 Ohio App.3d 799, 2010-Ohio-6269, 944 N.E.2d 307, ¶ 17 (7th Dist.), citing *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, at ¶ 90. Appellate courts review questions

of law under a *de novo* standard of review. *Id.*, citing *Skirvin v. Kidd*, 174 Ohio App.3d 273, 2007-Ohio-7179, 881 N.E.2d 914 (4th Dist.), at ¶ 14.

{¶15} "A party has standing to invoke the jurisdiction of the court if he has, in an individual or representative capacity, some real interest in the subject matter of the action." *Youngstown Edn. Assn. v. Kimble*, 2016-Ohio-1481, 63 N.E.3d 649, ¶ 12, citing *State ex rel. Dallman v. Court of Common Pleas*, 35 Ohio St.2d 176, 298 N.E.2d 515 (1973), syllabus. "In addition to standing authorized by common law, standing may also be conferred by statute." *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, ¶ 17. R.C. 1705.50 provides that:

> In a derivative action commenced pursuant to section 1705.49 of the Revised Code, the plaintiff shall be a member at the time of bringing the action. The plaintiff shall also have been a member at the time of the transaction of which he complains unless his status as a member devolved upon him by operation of law or pursuant to the operating agreement from a person who was a member at the time of the transaction.

{¶16} A member of a limited liability corporation is defined as "a person whose name appears on the records of the limited liability company as the owner of a membership interest in that company." R.C. 1705.01(G). Pursuant to R.C. 1705.14,

> (B) After the filing of the articles of organization of a limited liability company, a person may be admitted as an additional member in either of the following ways:

(1)  If he acquires an interest directly from the limited liability company, upon compliance with the operating agreement or, if the operating agreement does not so provide, upon the written consent of all of the members;

(2)  If he is an assignee of the interest of a member who has the power as provided in writing in the operating agreement to grant the assignee the right to become a member, upon the exercise of that power and compliance with any conditions limiting the grant or exercise of the power.

**{¶17}** The parties agree here that Appellants do not appear on B.T.'s records as members.  The parties also agree that B.T. did not have a written operating agreement.  Thus, in order to be considered members, Appellants must show either that the existing members, Beight and Tod, Jr., granted them membership by means of written consent or an assignment of an existing member's interest.  Appellants concede that they did not obtain membership through either of these methods.

**{¶18}** Instead, Appellants argue that they are members pursuant to R.C. 1705.24, which states that "the management of a limited liability company shall be vested in its members in proportion to their contributions to the capital of the company." Appellants mischaracterize R.C. 1705.24 as a mechanism to establish membership.  A plain reading of R.C. 1705.24 shows that the statute is intended to convey how *existing* members become managers of an L.L.C. and how much power each manager possesses.  As the issue in this appeal is the threshold question of whether Appellants are members of B.T., R.C. 1705.24 does not apply on its face.

**{¶19}** Turning to Appellants' promissory estoppel argument, Appellants asserted standing pursuant to R.C. 1705.24 in their complaint. Appellants first raised the theory of "*de facto*" membership in B.T. based on estoppel in their reply to Appellees' response to summary judgment.

**{¶20}** In order to successfully assert a promissory estoppel claim, the following elements must be proven: "(1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made; and (3) the reliance caused an injury to the party claiming estoppel." *Extreme Machine & Fabricating, Inc. v. Avery Dennison Corp.*, 2016-Ohio-1058, 49 N.E.3d 324, ¶ 36; (7th Dist.), citing *Trehar v. Brightway Ctr.*, 7th Dist. No. 14 JE 20, 2015-Ohio-4144, ¶ 17; *Landpor Contractors, Inc. v. C & D Disposal Tech. L.L.C.*, 7th Dist. No. 11-JE-28, 2013-Ohio-1436, ¶ 34.

**{¶21}** The evidence presented at trial demonstrated that Beight and Tod, Jr. wholly disagreed on nearly every aspect of B.T.'s operation. Among these disagreements was the prospect of adding members. According to Beight, he and Tod, Jr. had agreed to maintain a 50/50 membership in B.T. and had not agreed to add members. Tod, Jr. testified that he and Beight had a mutual understanding that they would have to give up some of their ownership interest in order to obtain additional investors.

**{¶22}** Appellants claim that they were promised membership in B.T. when they provided the $500,000 contribution. While Appellants contend in their brief that the money was intended to be a payment for a membership interest, both Appellants Daniel J. and Daniel P. O'Horo testified at trial that their monetary investment was for the purchase of the Essroc Property. (1/3/17 Trial Tr. Vol. III, pp. 447; 461.) Daniel J.

Case No. 17 CO 0010

O'Horo was asked whether the contribution was a "capital investment in this limited liability company." He responded that it was made in order to purchase the Essroc Property. (1/3/17 Trial Tr. Vol. III, p. 447.) Tod, Jr. labeled Appellants' monetary contribution as "A.P. O'Horo Investment" and "Capital: Dan O'Horo Equity" in the check registrar. No document was presented that states the contribution was the purchase of a membership stake.

{¶23} Further, neither Daniel J. nor Daniel P. O'Horo testified that they were promised a membership interest in B.T. Instead, it appears from the record that they presumed that they would be given a membership interest. Promissory estoppel requires proof that an actual promise was made.

{¶24} Appellants rely on Tod Jr.'s testimony that membership interests in the L.L.C. would be determined when purchase of the Essroc Property closed. However, there is no evidence that either Tod, Jr. or Beight specifically told Appellants that they would receive an interest after the property closed. In fact, Tod, Jr. testified that no one explained to Appellants what their role would be because it had not yet been determined. (1/3/17 Trial Tr. Vol. I, p. 40.)

{¶25} In a Tenth District case, an employee of a limited liability corporation sought to enforce an operating agreement. *Reif v. Wagenbrenner*, 10th Dist. No. 10AP-948, 2011-Ohio-3597, ¶ 34. The operating agreement outlined several conditions that, if met, would allow the employee to become a member. Those conditions were not met. Hence, the *Reif* court held that her membership did not vest. *Id.* at ¶ 28. In the alternative, the employee argued that she had been promised an ownership interest. The court stated in *Reif* that even if this claim was true, the purported statement was

Case No. 17 CO 0010

vague and did not provide a timeframe in which such membership would be granted. Thus, the employee could not succeed on a theory of promissory estoppel. *Id.* at ¶ 44.

**{¶26}** Based on *Reif* and the evidence of record in this case, even if it is true that Appellants, as investors, were to be awarded membership after B.T. purchased the Essroc Property, the property was never purchased. Additionally, there is no evidence that Beight or Tod, Jr. specifically promised Appellants membership in B.T. Hence, Appellants have provided no evidence to meet the elements required to prevail on a theory of promissory estoppel.

**{¶27}** Appellants concede that that they are not members of B.T. pursuant to either R.C. 1705.14 or R.C. 1705.24. It is clear that R.C. 1705.25 does not apply. Additionally, Appellants have failed to demonstrate promissory estoppel. Appellants' sole assignment of error is without merit and is overruled.

## Conclusion

**{¶28}** Appellants argue that the trial court erroneously found that they lacked standing to bring a shareholder derivative action as individuals and on behalf of B.T. Environmental Solutions, L.L.C. As Appellants were not members of B.T., the trial court properly ruled that they lacked standing to bring a shareholder derivative action. Appellants' argument is without merit and the judgment of the trial court is affirmed.

Donofrio, J., dissents; see dissenting opinion.

Bartlett, J., concurs.

Donofrio, J., dissenting opinion.

Case No. 17 CO 0010

**{¶29}** I respectfully dissent from the majority opinion. For the following reasons, I would reverse the trial court's judgment and find the O'Horos have standing to bring a claim in this matter.

**{¶30}** As the majority states, R.C. 1705.14 provides ways for a person to become a member of a limited liability company:

(A) A person becomes a member at the time that a limited liability company is formed or at any later time that is specified in the records of the company for becoming a member.

(B) After the filing of the articles of organization of a limited liability company, a person may be admitted as an additional member in either of the following ways:

(1) If he acquires an interest directly from the limited liability company, upon compliance with the operating agreement or, if the operating agreement does not so provide, upon the written consent of all of the members;

(2) If he is an assignee of the interest of a member who has the power as provided in writing in the operating agreement to grant the assignee the right to become a member, upon the exercise of that power and compliance with any conditions limiting the grant or exercise of the power.

**{¶31}** As the majority points out, it is undisputed that the O'Horos did not become members at the time the LLC was formed. Thus, the first part of subsection A does not apply here.

Case No. 17 CO 0010

{¶32} But I would find that the O'Horos became de facto members of the LLC pursuant to the remainder of R.C. 1705.14. Under the second part of subsection A, a person can become a member at any later time that is specified in the LLC records for becoming a member. And under subsection B, a person may be admitted as an additional member of the LLC if he acquires an interest from the LLC in compliance with the operating agreement or upon written consent of all members. In this case, the LLC was working to put an operating agreement in place when its members entered into an agreement with the O'Horos and accepted their contribution into the LLC. Thus, I would find that the O'Horos became de facto members of the LLC.

{¶33} While the LLC did not have any records yet, they were working towards creating the operating agreement. Moreover, a preponderance of the evidence demonstrated the parties' intent was for the O'Horos to have an ownership interest in the LLC. Additionally, the testimony was undisputed that the O'Horos contributed the greatest amount of capital by far to the LLC.

{¶34} When he testified at trial, Tod Jr. stated that he was testifying on behalf of the LLC and on behalf of the "shareholders that have invested money in the company." (Tr. 114).

{¶35} Tod Jr. testified that, upon forming the LLC, he and Beight agreed they would be partners and they would "grow the company" and "bring in additional people." (Tr. 16). They located property they wished to purchase for their business. (Tr. 18). Initially, Beight contributed $100. (Tr. 18). Tod Jr. contributed $5,000. (Tr. 20). And Tod Jr.'s father contributed $50,000. (Tr. 19). After a few meetings, the O'Horos contributed $500,000. (Tr. 34).

**{¶36}** Tod Jr. testified that at the time the O'Horos contributed the money, no written documents were given to them as to what they were buying into because at that point in time, "the deal had not closed yet." (Tr. 39). As mentioned previously, the LLC was still working on the operating agreement. Tod Jr. stated that when he and Beight accepted the O'Horos' money, they did not tell the O'Horos they would only have a limited role in the company. (Tr. 40). He acknowledged that the O'Horos were the biggest contributors of money to the LLC. (Tr. 40-41). Tod Jr. stated that he and Beight explicitly told the O'Horos their money was to be used for the purchase of the Essroc property. (Tr. 41-42).

**{¶37}** In his deposition, Tod Jr. stated that in exchange for their $500,000 check, the O'Horos

> would receive a certain percentage ownership in the B shares, and I say certain percentage because the funding hadn't been completed, so we didn't know the exact percentage, but [the O'Horos] would receive a stock certificate indicating how many shares (inaudible) in the B shares for [the LLC].

(Tr. 94). Tod Jr. further indicated that the O'Horos understood they were going to get a percentage of ownership in the LLC in exchange for their investment. (Tr. 95).

**{¶38}** Tod Jr. testified that the LLC never actually got up and running nor did it reach a closing. (Tr. 44). In other words, the LLC never purchased the Essroc property. (Tr. 44). And had the project come to fruition, the LLC would have issued certificates of ownership and "everybody would know their percentage." (Tr. 44).

**{¶39}** Significantly, Tod Jr. treated the O'Horos as members of the LLC. For example, when it appeared that Beight was spending the LLC's money on trucks that he titled in his own name, Tod Jr. had a meeting at the O'Horos' office where they put Beight on speakerphone and asked for an explanation. (Tr. 75). Tod Jr. and Beight also discussed the issue of the trucks with the O'Horos. (Tr. 100). Additionally, when it appeared Beight was spending LLC money without authorization, the O'Horos sent a letter to Beight requesting that he cease and desist. (Tr. 101).

**{¶40}** Daniel P. testified that when he and his father gave the $500,000 to the LLC no one told them that they were not a part of the LLC. (Tr. 177). Likewise, no one told them that their involvement in the LLC was restricted in any way. (Tr. 177). Daniel P. testified that when the O'Horos gave the money to the LLC, they stated that the money was to be used toward the purchase of the Essroc property. (Tr. 178). After making their investment, the O'Horos participated in various meetings in an attempt to bring the purchase of the Essroc property to fruition. (Tr. 178). And when Daniel P. learned of Beight's spending, the O'Horos called a meeting to discuss the situation. (Tr. 181).

**{¶41}** Daniel P. further testified that when he and his father put the $500,000 into the LLC, they anticipated being stockholders in the LLC. (Tr. 457). Even more so, he stated that they were going to be "involved owners." (Tr. 457). Daniel P. also testified that the parties involved had numerous meetings, which were frequently held at the O'Horos' office. (Tr. 459).

**{¶42}** Beight testified that he and Tod Jr. initially entered into the LLC fifty-fifty. (Tr. 238). Beight stated that Tod Jr. then explained to him that they would have to give

Case No. 17 CO 0010

up some of the company in order to get investors. (Tr. 239). Beight stated he agreed to go down to 25-percent ownership. (Tr. 239, 240, 256).

**{¶43}** When asked if he ever felt that he needed the O'Horos' acceptance of how he spent the LLC's money, Beight responded that he felt like he had their acceptance. (Tr. 254). Beight later testified, however, that he looked at the O'Horos' money as an investment on their part from which they would get dividends as if they were purchasing stock in the LLC. (Tr. 290). But despite this characterization, Beight agreed that he was involved in numerous meetings with Tod Jr. and the O'Horos regarding the running of the LLC. (Tr. 291-292). And he agreed that the O'Horos were involved in discussions regarding the operation and the purpose of the LLC. (Tr. 293). Beight also stated that Daniel J. was the person who instructed him to clean up the Essroc property, which he began to do. (Tr. 316, 327-328, 363).

**{¶44}** The O'Horos' contribution to the LLC was ten times greater than the next largest contributor (Tod Sr.). Tod Jr. agreed that when the O'Horos contributed to the LLC, they were to receive an ownership interest in the LLC. Daniel P. believed that when he and his father contributed to the LLC, they would be "involved owners." The LLC held meetings at the O'Horos' office. Beight agreed that he was involved in numerous meetings with Tod Jr. and the O'Horos regarding the running of the LLC. Beight felt that he had the O'Horos' acceptance as to how he was spending their money. When questions arose as to how Beight was in fact spending the O'Horos' money, Tod Jr. went to the O'Horos' office. From the O'Horos' office and with their involvement, Tod Jr. contacted Beight on speakerphone to address the issue.

**{¶45}** This evidence demonstrates that all parties involved treated the O'Horos as members of the LLC once they contributed $500,000. Based on the testimony, I would find that the O'Horos were de facto members of the LLC. Nothing in the law prohibits a person from becoming a de facto member of an LLC under the facts of this case. Based on the totality of the specific circumstances here, the only equitable result is to allow the O'Horos to bring this action. Therefore, I would find they had standing to bring this action on behalf of the LLC.

[Cite as *B.T. Environmental Solutions, L.L.C. v. B.T. Energy Group, Inc.*, 2018-Ohio-5113.]

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**